UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



------------------------------------------------------X

RICHARD A. ADAMS                                      :

On behalf of himself and on                          :
behalf of all others similarly situated,             :

                                                     :
                          Plaintiff,                 :

                                                     :
        - against -                                  :

                                                     :
IBM PERSONAL PENSION PLAN, and                       :

                                                     :
KENNETH J. MORRISSEY,                                :
Plan Administrator                                   :

                                                     :
                          Defendants.                :
------------------------------------------------------X:

JUDGE RAKOFF

**07 CIV 6984**

Case No.:

CLASS ACTION COMPLAINT

Nature of Action

1.      This is an action brought under the Employee Retirement Income Security Act

of 1974, as amended ("ERISA"), 29 U.S.C. § 1001, *et seq.*

2.      Plaintiff Richard A. Adams challenges the failure of Defendant IBM Personal

Pension Plan (the "Plan"), as administered by Defendant Kenneth J. Morrissey, the Plan's

Administrator (collectively, "Defendants"), to provide him with his Plan benefit calculated in

accordance with the requirements of ERISA and/or the terms of the Plan.

3.      Specifically, Mr. Adams alleges that the lump sum distribution of his Plan

benefit that he received from the Plan on or about September 19, 2005 was an illegal or

improper underpayment of his promised benefit for one of at least three separate reasons.

4.    **First**, in violation of ERISA § 203(a), 29 U.S.C. § 1053(a), and the parallel provisions of the Internal Revenue Code (the "Code" or "IRC"), the Plan caused him to forfeit a portion of his nonforfeitable accrued benefit by failing to actuarially increase his benefit to reflect the delay in the payment of his benefit after the later of the date he attained normal retirement age and the date he terminated employment with IBM, *i.e.,*, June 1, 2003.

5.    **Second**, the Plan violated ERISA § 205(c)(8), 29 U.S.C. § 1055(c)(8), IRC § 417(a)(7)(A), by permitting Mr. Adams to elect a retroactive annuity starting date of June 1, 2003 but then paying him, almost 2½ years later on September 19, 2005, the identical lump sum amount, $151,349.10, that it would have paid him on June 1, 2003, without making an appropriate interest adjustment, as also required by law.  *See* 26 C.F.R. ("Treas. Reg.") § 1.417(e)-1(b)(3)(iv)(B) (distributions pursuant to retroactive annuity starting date election require "appropriate adjustment for interest").

6.    **Third,** the Plan violated its own terms by failing to provide continued hypothetical "interest credits" to Mr. Adams' cash balance account between June 1, 2003 and September 19, 2005, the date the account "terminated" within the meaning of the Plan because until that time, the right to receive continued interest credits is expressly guaranteed by the terms of the Plan.

7.    Mr. Adams also challenges the improper refusal of the Plan Administrator to provide him, in connection with his attempt to resolve this dispute through the Plan's claims process, with the documents, records and other information to which he was and is entitled under the governing Department of Labor ("DOL") claims regulations, 29 C.F.R.

§ 2560.503-1 (the "claims regulations").  Mr. Adams separately challenges the Plan

Administrator's separate refusal to comply with his request for documents under ERISA

§ 104(b)(4), 29 U.S.C. § 1024(b)(4).

## The Parties

8.     Plaintiff Richard A. Adams is a former employee of IBM Corporation ("IBM")

and a participant in the Defendant Plan within the meaning of ERISA § 3(7), 29 U.S.C.

§ 1002(7).

9.     Defendant IBM Personal Pension Plan (EIN: 13-0871985 - Plan No.: 001) is

an "employee pension benefit plan," and more specifically a "defined benefit plan," within the

meaning of ERISA §§ 3(2)(A) and 3(35), 29 U.S.C. §§ 1002(2)(A) and 1002(35).  IBM, a

New York corporation, with its headquarters and its principal place of business in this District

(Armonk, New York), is the Plan's sponsor.  The Plan is located and administered in this

District.  *See, e.g.,* Plan's IRS 5500 filings, line 3b; Plan §§ 5.1-5.6, 23.3.

10.     Defendant Kenneth J. Morrissey is the Plan Administrator within the meaning

of Plan § 5.4, and the administrator within the meaning of ERISA § 3(16)(A), 29 U.S.C.

§ 1002(16)(A).

11.     "Defendants" refers to both Defendants or either of them or their agents or

representatives in fact.

## Jurisdiction and Venue

12.     This Court has subject matter jurisdiction over this action by virtue of 28

U.S.C. § 1331 because this is a civil action arising under the laws of the United States.   In

addition, the Court has jurisdiction pursuant to 29 U.S.C. §§ 1132(e)(1) and (f) since this action is brought under § 502(a) of the ERISA statute, 29 U.S.C. § 1132(a).

13.    This Court has personal jurisdiction over Defendants because, among other reasons, ERISA provides for nationwide service of process, *see* ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2); and Defendants have continuous and systematic general business contacts with the nation as a whole and with this District in particular.

14.    Venue here is proper under ERISA § 502(e), 29 U.S.C. § 1132(e), which provides that an action "may be brought in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found."  Venue is proper here for any or all of the four reasons provided by the statute:  (1) the Plan is administered in this District; (2) some or all of the breaches occurred in this District; (3) the Plan and/or the Plan Administrator "may be found" in this District, and/or (4) the Plan and/or the Plan Administrator "reside[]" in this District.

### Statement of Facts

15.    The iteration of the Plan most directly relevant here became effective July 1, 1999.  The Plan is a defined benefit pension plan of the so-called "cash balance" variety that determines a participant's benefit by reference to a hypothetical account known as a Personal Pension Account ("PPA").  *See* Plan § 11.1.  Every month, a participant's PPA accumulates hypothetical "pay credits" at a rate of 5% of the employee's salary and hypothetical "interest credits" at a rate one percentage point higher than the rate of return on one year Treasury Constant Maturities.  *Id.,* §§ 11.3, 11.4.  Unless and until a participant's PPA is "terminated," he or she has the right to the continued receipt of interest credits.  *Id.*, §§ 11.4, 11.5.

16.    When a participant's employment with IBM ends, he or she may withdraw his or her PPA as a lump sum or defer the receipt of a lump sum payment or an annuity until a later date.  *Id.,* §§ 12.1(a), 12.3(c).

17.    The Plan's normal retirement age is the later of age 65 and the completion of one year of Continuous Service.  *Id.,* § 2.37.

18.    The Plan provides for a "Benefit Commencement Date" for a benefit in the form of an annuity of "the first day of the first month for which an amount is payable as annuity" and for a benefit in the form of a lump sum distribution of "the first day on which all events have occurred which entitle the recipient to such lump sum distribution."  *Id.,* § 2.6.

19.    The Plan determines actuarial equivalence as of the relevant Benefit Commencement Date by comparing a benefit differing in time, period or manner of payment from another benefit using "the Applicable Interest Rate and the Mortality Table."  The Applicable Interest Rate is, for most of the relevant time frame, the average yield on 30-year Treasury bond for the months of August, September and October preceding the Plan Year in which Benefit Commencement Date occurs.  Plan § 2.4.  The applicable Mortality Table, for most of the relevant time frame, is the 1994 Group Annuity Reserving Table projected to 2002 weighted 50% male/50% female.  *Id.* § 2.36.

20.    On May 31, 2003, Mr. Adams separated from employment with IBM.  He was age 67 at the time and married.

21.    As of June 1, 2003, the balance of Mr. Adams' PPA hypothetical account was $151,349.10.

22.     To comply with ERISA, as well as to be considered a qualified plan under the Code, defined benefit pension plans must pay benefits to married participants in the form of a "qualified joint and survivor annuity" ("QJSA"), unless the participant and his or her spouse consents to distribution in a different form, such as a single life annuity ("SLA") or single sum distribution (or "lump sum"), after having received the required written explanations and disclosures of their benefit options (the "QJSA explanation").  ERISA § 205(a)(1), 29 U.S.C. § 1055(a)(1), IRC §§ 401(a)(11)(A)(i), 417.  In the case of a lump sum distribution, ERISA and the Code require that the Plan pay lump sums that are equal to the present value of a participant's accrued benefit paid as a single life annuity.  ERISA §§ 203(e)(3), 205(g)(3), 29 U.S.C. §§ 1053(e)(3), 1055(g)(3), IRC §§ 411(a)(11), 417(e)(3) and Treas. Reg. §§ 1.411(a)-11(d), 1.417(e)-1.

23.     As of June 1, 2003, Mr. Adams had accrued the right to immediately begin receiving a QJSA annuity of $948.63 per month payable for life, with a survivor benefit of half that amount to be paid to his wife monthly for the remainder of her life if he were to pre-decease her.  If he so elected and his wife consented, he also had the right to a $1,141 per month single life annuity for as long as he lived, with no survivor benefit, or the right to a lump sum distribution equal to the balance of his PPA account as of that date, that is, $151,349.10.

24.     Mr. Adams, however, did not request nor did he receive an actual distribution of his Plan benefit on or about June 1, 2003.  In fact, Mr. Adams did not request a distribution of his benefit until more than 2 years later, in August 2005 following his receipt of the required explanations and disclosures from the Plan in July 2005.  At that time, the Plan

offered him the three options described in the preceding paragraph.  Mr. Adams elected, with his wife's consent, to receive his benefit in the form of a lump sum.  Pursuant to his request, Mr. Adams received, on or about September 19, 2005, as a purported final distribution of the entirety of his Plan benefit, a check in the amount of $151,349.10 – the same amount he would have received nearly 2½ years earlier, on June 1, 2003.  Had Mr. Adams elected an annuity option, according to the terms of the Summary Plan Description ("SPD") then in effect, he would have received an annuity in an amount no greater than that he would have received on June 1, 2003.

25.    ERISA and the Code provide that "each pension plan shall provide that an employee's right to his normal retirement benefit is nonforfeitable upon the attainment of normal retirement age."  ERISA § 203(a), 29 U.S.C. § 1053(a), IRC § 411(a).  In order for an employee's accrued benefit to be nonforfeitable, a defined benefit plan must make an actuarial adjustment anytime it delays the actual payment of the participant's accrued benefit past normal retirement age.  *See, e.g.,* Treas. Reg. § 1.401(a)(9)-6, Q&A-9.[1]

26.    The minimum required actuarial adjustment to an accrued benefit the payment of which is deferred past normal retirement age is an actuarial increase using the plan's assumptions for actuarial equivalency.  *Id.,* Q&A-8 and 9.

27.    This means that the Plan could not simply pay Mr. Adams the balance of his

---

[1] The sole exception not relevant here is ERISA § 203(a)(3)(B), which provides that the right to an accrued benefit is not forfeitable solely because the plan provides that the payment of benefits is suspended for such period as the employee is employed subsequent to the commencement of payment of such benefits.  ERISA § 203(a)(3)(B), 29 U.S.C. § 1053(a)(3)(B), IRC § 411(a)(3)(B)).  The period at issue in this action concerns the period following the termination of Mr. Adams' employment.  Until Mr. Adams is in possession of affirmative evidence to the contrary, he will assume that he was provided with an appropriate suspension of benefits notice.

PPA ($151,349.10) when it distributed his benefit to him in September 2005.  Nor could it simply offer him the same annuity it offered him on June 1, 2003 (a QJSA of $948.63 per month or a SLA of $1,141 per month).  Instead, it was required to actuarially increase those amounts using the Plan's assumptions for actuarial equivalency.  Had the Plan done so, Mr. Adams' benefit expressed in the form of a lump sum would have exceeded the lump sum amount that he actually received.  Similarly, had the Plan actuarially increased those amounts using the plan's assumptions for actuarial equivalency, Mr. Adams' benefit expressed as either a QJSA or SLA would have exceeded the annuity amounts he was offered.

28.    Alternatively, the Plan still underpaid Mr. Adams if, as the Plan seems to assume, Mr. Adams' Benefit Commencement Date regardless of the form of payment he elected was June 1, 2003.  In that case, Mr. Adams would have elected, at the Plan's behest, a retroactive annuity starting date of June 1, 2003, *i.e.,* an annuity starting date occurring on or before the date the QJSA written explanation was provided to him and the spousal consent form was provided to his wife in July 2005.

29.    While permissible under ERISA § 205(c)(8), 29 U.S.C. § 1055(c)(8), IRC 417(a)(7)(A), a plan can only validly provide for retroactive annuity start dates if, among other things, the plan makes an appropriate adjustment for interest from the date the missed payment or payments would have been made (here, June 1, 2003), to the date of the actual make-up payment (here, September 19, 2005).  *See* Treas. Reg. § 1.417(e)-1(b)(3)(iv)(B).

30.    The Plan did not do this.  It neither adjusted Mr. Adams' lump sum with interest on September 19, 2005, nor did it offer to provide Mr. Adams with interest on his missed annuity payments had he elected an annuity option with a Benefit Commencement

Date of June 1, 2003. Had the Plan done so, Plaintiff's benefit expressed in the form of a lump sum would have exceeded the lump sum amount that he actually received. So too, expressed as either a QJSA or SLA annuity, the amounts offered would have included a one-time lump sum payment equal to the amount of monthly payments missed since June 1, 2003 with interest.

31.    Alternatively, the Plan still underpaid Mr. Adams because the Plan by its terms was required to continue allocating interest credits to Mr. Adams' PPA between June 1, 2003 and September 19, 2005 but failed to do so.

32.    As noted above, unless and until a participant's PPA is "terminated," he or she has the right to the continued receipt of interest credits. Plan § 11.4. Section 11.5 in turn provides that a participant's account will be "terminated" only when the account is paid out (or deemed to be paid under circumstances not applicable here), either as a lump sum or as an annuity:

> *11.5    Termination of Personal Pension Account*
>
> If a Participant's entire Personal Pension Account is paid as a lump sum distribution (or is deemed to be paid as a lump sum distribution or is forfeited under Section 3.3(a)(l) or (b)(l)) or begins to be paid as an annuity, the Participant's Personal Pension Account shall be **terminated as of such Benefit Commencement Date.**

Plan § 11.5 (emphasis added).

33.    The Plan specifically defines "Benefit Commencement Date" in the case of a lump sum to be "the first day on which all events have occurred which entitle the recipient to such lump sum distribution." Plan § 2.6. Yet all events entitling Mr. Adams to a lump sum could not have occurred until he elected that form of distribution and his wife consented. This did not occur until late August 2005. Until at least that time, the Plan was required by its

terms to continue to credit Mr. Adams' PPA account with interest credits. Had the Plan done

so, Plaintiff's benefit expressed in the form of a lump sum would have exceeded the lump

sum amount that he actually received. So too, expressed as either a QJSA or SLA annuity,

those annuities would have exceeded the annuity amounts he was offered.

34.    At a point following his May 31, 2003 separation from employment with IBM,

Mr. Adams came to learn that the Plan was not crediting his PPA with interest credits for the

period following his separation. Mr. Adams immediately challenged this clear violation of

the terms of the Plan in written and oral communications with the Plan including in a letter

dated May 24, 2004 in which Mr. Adams asserted that he should receive post-May 31, 2003

interest on his account balance.

35.    This request for a Plan benefit was made in accordance with the Plan's

procedures for filing benefit claims and a claim for benefits within the meaning of the claims

regulation. 29 C.F.R. § 2560.503-1(e).[2] These communications were reasonably calculated

to bring Mr. Adams' claim for post-May 31, 2003 interest to the attention of the Plan and Plan

Administrator and were understood, and responded to, by Defendants as such, as

demonstrated below.

---

[2] Mr. Adams denies that the Plan established and maintained reasonable claims procedures within the
meaning of the claims regulations. For example and of direct relevance here, in violation of the claims
regulation, the Plan SPD did and does not describe a procedure for filing benefit claims. 29 C.F.R. §§
2560.503-1(b)(2), (e). Instead of apprising a claimant how to file a claim for benefits, the SPD starts
its discussion of the claims process at the point at which an already filed "application for benefits from
the plan is denied." SPD § 1.13.3. Even assuming the Plan had established and maintained reasonable
claims procedures in this regard (and the SPD is deficient in numerous regards), Mr. Adams clearly
made such an application for benefits for post-May 31, 2003 interest on his account balance via his
May 24, 2004 letter and other communications identified above.

36.    On August 5, 2004, in the course of denying Mr. Adams' appeal from the

denial of other claims he had asserted that are not at issue here, the Plan Administrator denied

Mr. Adams' claim for benefits with respect to the interest issue by stating:

> With respect to your request for interest on your PPA balance since May 31, 2003,
> **under Plan provisions**, <u>you were required</u> to commence your benefit immediately
> after your separation from IBM on May 31, 2003. Despite repeated requests that you
> complete the necessary applications for benefits, you have failed to do so.  <u>The Plan
> does not allow for interest credits on your account balance after May 31, 2003 due to
> delayed commencement because of your failure to take the necessary steps to start
> benefit payments</u>.

(emphasis added).

37.    These assertions were untrue:  the fact that Plaintiff did not make an

affirmative written election in June 2003 to defer receipt of his benefits did not mean that he

forfeited the right to continued interest credits guaranteed under § 11.4 of the Plan.

38.    Apart from lacking any substantive basis in fact or law, the Plan

Administrator's denial of Mr. Adams' claim also violated Mr. Adams' right to administrative

due process.  The claims regulation requires a plan administrator to notify a claimant of the

reasons for a denial in a manner calculated to be understood by the claimant, to cite for the

claimant "the specific plan provisions on which the determination is based," and to provide

the claimant with a description of additional information needed to perfect the claim, a

description of the plan's review procedures and a statement of the claimant's right to bring a

civil action following an adverse decision on review.  29 C.F.R. § 2960.503-1(g)(1).  The Plan

and the SPD generally provide likewise.  *See* Plan, Art. 7; SPD § 1.13.3.

39.    Defendants' August 5, 2004 response did none of these things.  First, the

reason for the denial was not explained in a manner likely to be understood by an ordinary

claimant, in violation of 29 C.F.R. §§ 2960.503-1(g)(1), (g)(1)(i).  Second, further obscuring

the reason for the denial, Defendants failed, in direct violation of 29 C.F.R. § 2960.503-

1(g)(1)(ii), to identify which "Plan provisions" required Plaintiff to commence his benefit

immediately after his separation from IBM and which "Plan provisions" required (or at least

authorized) the Plan to deny interest credits to a participant who failed to do so.  Third, the

August 5, 2004 letter contained no description of any additional material or information

necessary for Mr. Adams to perfect his claim, together with an explanation of why such

material or information was necessary, in violation of 29 C.F.R. § 2960.503-1(g)(1)(iii).

Fourth, the August 5, 2004 letter contained no description of the Plan's review procedures and

the time limits applicable to such procedures, in violation of 29 C.F.R. § 2960.503-1(g)(1)(iv),

and also omitted, with respect to Defendants' denial of the claim for post-May 31, 2003

interest, any statement of Mr. Adams' right to bring a civil action under ERISA § 502(a)

following an adverse benefit determination on review, also in violation of 29 C.F.R. §

2960.503-1(g)(1)(iv).

40.      Defendants had reason to respond as they did – *e.g.,* not even citing the Plan

provisions which they claim dictated the outcome – precisely because their denial was neither

based on any provision of the Plan nor on any discretionary interpretation of any provision of

the Plan.  Mr. Adams' challenge to the cut-off of interest credits (embodied here in Count

Three) was a challenge to an *ad hoc* and inconsistently applied policy which Defendants had

previously adopted solely for their administrative convenience and the financial self-interest

of the Plan and which Defendants knew was indefensible under the terms of the Plan.  So too

Defendants realized that forthrightly addressing Mr. Adams' plan-based challenge could expose the violations of ERISA and the Code challenged here (in Counts One and Two).

41.    On September 20, 2004, Mr. Adams attempted to further appeal the denial of other claims not at issue here. In the course of responding to this letter, on October 7, 2004, the Plan Administrator said:

> While reviewing your matter with the pension services staff at the Employee Services Center, they have informed me that you still have not elected a distribution from the Personal Pension Account. As such, I want to remind you that you will need to contact the Center when you want to receive your benefit. Under the [Plan], you have many distribution options (annuity, lump sum, etc.) that you should carefully consider. As was indicated in my August 5, 2004 letter to you, we informed you that <u>you were required to commence your IBM pension plan benefit immediately after your separation on May 31, 2003</u>. We must remind you once again that <u>the Plan does not allow for interest credits on your PPA account balance after May 31, 2003 due to delayed commencement because of your failure to take the necessary steps to start benefit payments</u>.

(emphasis added). As a denial of a claim for benefits, this response was as improper as Defendants' August 5, 2004 letter referenced above.

42.    Even if Defendants' failures to establish and follow reasonable claims procedures required Mr. Adams to continue to exhaust the Plan's claims process, he more than adequately did so. For example, following his receipt of the Plan Administrator's October 7, 2004 letter, Mr. Adams spoke with Plan representatives by telephone, including Ms. Dalaine Meyers, to try to obtain information regarding the basis for the Plan's denial of his claim for post-May 31, 2003 interest. These representatives could not or would not explain the basis for the Plan's denial.

43.    On June 2, 2005, Mr. Adams wrote Ms. Meyers, asking: "Would you please get a letter from legal as to why I am not getting interest on my lump sum for the last two

years."   Mr. Adams never received a response to this request just as he never received a response to other requests he made for documents, records and other information relevant to his claim for post-May 31, 2003 interest.  This too violated the claims regulation.

44.     The claims regulation requires that at the claimant's request, a plan must provide all "relevant" documents, records, and other information, including all documents, records and other information, relied upon or generated during the course of the making of the benefit determination without regard to whether relied upon in the final decision.  29 C.F.R. § 2560.503-1(h)(2)(iii); 29 C.F.R. § 2560.503-1(m)(8).  "Relevant" documents, records and other information also includes such documents and other information demonstrating compliance or lack of compliance with the administrative processes and safeguards required to ensure that the plan provisions at issue have been applied consistently with respect to similarly situated claimants.  *Id.*  Defendants failed to produce any of these materials or information to Mr. Adams, despite his explicit requests, made both after his claim and his appeal were denied, as also discussed below.  Again, these were willful failures designed to thwart Mr. Adams' claim and keep him from discovering that Defendants' denial lacked any basis in the actual terms of the Plan and that the Plan was in violation of law for the reasons identified here.

45.     On June 10, 2005, although never informed of his right to appeal, Mr. Adams wrote the Plan again to complain about the continuing denial of his claim for post-May 30, 2003 interest.  Mr. Adams noted that the Plan had sent him a letter dated April 18, 2005 (responding to his request for a benefit estimate) in which the Plan made assertions inconsistent with its position on the crediting rate issue.  As Mr. Adams noted, the April 18,

2005 letter states under "Determining Your Distribution Date": "If you elect a lump sum, the amount of your lump sum will be larger the longer you wait to receive your benefit." This supported Mr. Adams' arguments and contained no suggestion that a failure to make a timely, affirmative deferral election would lead to the loss of continued interest credits on lump sum benefits. As Mr. Adams explained: "I retired on May 31, 2003 and I talked with Ms. Dalaine Meyers and she said IBM would not pay me interest for the 2 years that I have not received my pension. **I do not understand why IBM is not required to follow the ERISA mandates** and the promises it states in the letters I have received." (emphasis added).

46.     These communications to the Plan, taken in isolation or together, constituted an appeal from the August 5, 2004 and October 7, 2004 denial of Mr. Adams' claim for benefits within the meaning of the claims regulation, the Plan and/or the SPD, if such appeal was required in light of, for example, Defendants' failures to establish and follow reasonable claims procedures. They were reasonably calculated to bring Mr. Adams' appeal for post-May 31, 2003 interest to the attention of the Plan and Plan Administrator and were understood, and responded to, by Defendants as such, as Defendants' letter of July 20, 2005 demonstrates.

47.     On July 20, 2005, ignoring the April 18 letter and the new points that Mr. Adams had raised, the Plan Administrator reaffirmed the denial of his claim for post-May 31, 2003 interest:

> In the August 5, 2004, claim denial appeal letter, I also stated that you were required to commence your benefit immediately after your separation from IBM on May 31, 2003, that you failed to commence your benefit despite repeated requests that you complete the necessary application for benefits, and that the Plan does not allow for interest credits on your PPA balance after May 31, 2003 since the delayed commencement is because of your failure to take the necessary steps to start benefit

payments.  In other words, you are not entitled to interest on your PPA balance since
your separation of May 31, 2003. . . .

(emphasis added).

48.     The Plan Administrator concluded his July 20, 2005 letter by saying, in

essence, that Defendants had heard enough and would under no circumstances reconsider

their denial of Mr. Adams' claim:

> **The August 5, 2004 letter exhausted your appeal process under the Plan and
> constituted a final determination of your benefit under the Plan.  Thus, your
> benefit will not be changed**.  Once again, I encourage you to apply to start your
> pension benefit under the Plan.  Your benefit will not be increased by delaying the
> application process.  Please call Ms. Dalaine Meyers, Employee Services Center,
> Fidelity Investments, at 1-800-796-9876, for assistance in commencing your pension
> benefit.  She is expecting your call.

(emphasis added).

49.     Defendants' refusal to consider an appeal of their denial of Mr. Adams' claim

violated Mr. Adams' right under the statute, the claims regulation, the Plan and the SPD to a

full and fair review of that denial.  *See* 29 U.S.C. § 1133(2); 29 C.F.R. § 2560.503-1(h)(1);

Plan, Art. 7; SPD § 1.13.3.  A full and fair review involves providing a claimant, at a

minimum, with the opportunity to be heard.  *Id.*

50.     Even if construed as an actual denial of an appeal, the July 20, 2005 letter was

nevertheless improper.  The claims regulation requires a plan administrator to notify a

claimant of the reasons for a denial upon review in a manner calculated to be understood by

the claimant, to cite for the claimant "the specific plan provisions on which the determination

is based," to provide the claimant with a statement of the claimant's right to receive upon

request, free of charge, access to and copies of relevant documents, records and other

information, as well as a statement of the claimant's right to bring a civil action following an

adverse decision on review.  29 C.F.R. § 2960.503-1(j)(1)-(4).  The Plan and the SPD

generally provide likewise.  *See* Plan, Art. 7; SPD § 1.13.3.

51.    Defendants' July 20, 2005 letter did none of these things.  As in the case of the

2004 denial letters, the reason given for the denial was not clear, no specific Plan provisions

were cited as justifying the decision, there was no statement concerning Mr. Adams' right to

documents, records and other information relevant to this claim and no statement of his right

to sue, each of which constituted independent violations of 29 C.F.R. § 2960.503-1(j)(1).

52.    On February 22, 2007, Mr. Adams, this time represented by undersigned

counsel, wrote to the Plan Administrator with three separate requests, two of which are at

issue here.

53.    First, Mr. Adams requested disclosure of all documents, records and other

information relevant to his claim with respect to the interest issue that had not been previously

disclosed to him.  For the Plan Administrator's benefit, Mr. Adams made specific reference to

the claims regulation, explained that complete disclosure had not been made to date, and

asked that the situation be remedied promptly.  Although the Plan Administrator received Mr.

Adams' letter shortly after it was sent, neither the Plan nor the Plan Administrator has ever

responded to Mr. Adams' request, again making clear that any attempt to obtain

administrative due process from the Plan in the context of a claims process would be an act of

futility.

54.    Second, also in this February 22, 2007 letter, Mr. Adams requested a copy of

all documents to which he was and is entitled under ERISA § 104(b)(4), 29 U.S.C.

§ 1024(b)(4).  ERISA § 104(b)(4) entitles participants to "a copy of the latest updated

summary plan description, plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, [and] other instruments under which the plan is established or operated." ERISA § 104(b)(4), 29 U.S.C. § 1024(b)(4).

55.    Again, notwithstanding this clear command, the Plan and Plan Administrator ignored Mr. Adams' request. In a letter dated March 30, 2007, **IBM Corporation**, to which Mr. Adams' request was not directed and which is neither the Plan nor the Plan Administrator, purported to respond to Mr. Adams' letter "seeking plan documents under ERISA 204(b) [sic]."[3] Each of the three "reasons" IBM Corporation invoked for denying Mr. Adams' request under ERISA § 104(b)(4) is either spurious or incorrect and provide further evidence of both IBM's and Defendants' bias.

56.    The first "reason" given for denying Mr. Adams' request under ERISA § 104(b)(4) was that he had already been unsuccessful in his claim for benefits. But a request under ERISA § 104(b)(4) has nothing to do with a claim for benefits: any participant is entitled to such documents, whether he or she had, has or may in the future have a claim for benefits.

57.    The second "reason" given for denying Mr. Adams' request under ERISA § 104(b)(4) was that, in IBM Corporation's view (not in the view of the Plan Administrator or the Plan which have never answered Mr. Adams' request) Mr. Adams has no rights under ERISA § 104(b)(4) because he is no longer a Plan "participant." But as set forth herein, that is incorrect. All that is required under the statute to be entitled to request documents under ERISA § 104(b)(4) is to be an employee or former employee with a colorable claim to

---

[3] ERISA § 204(b) deals with benefit accruals under defined benefit plans, not requests for plan documents.

additional benefits.  This Complaint amply demonstrates that Mr. Adams has at least a

colorable claim to additional benefits, either under the terms of the Plan or as implied by law.

58.     The third and final "reason" given for denying Mr. Adams' request under

ERISA § 104(b)(4) was that Mr. Adams had failed to pay IBM Corporation $1,742.48 that

Mr. Adams owed IBM Corporation in court costs following an unsuccessful lawsuit Mr.

Adams brought *pro se* against IBM Corporation.  ERISA, however, does not authorize a plan

sponsor to interfere with a participant's statutory right to plan documents via a request

directed to the plan administrator simply because the plan sponsor has some independent

grievance against the participant.  Nor does it permit a plan sponsor to threaten a participant,

as IBM crudely did in its letter, in a misguided effort to deter the participant to exercising his

rights under the Act.

**Exhaustion**

59.     Exhaustion of the Plan's internal claims process, assuming it was and is

ERISA-compliant, was not required to the extent Plaintiff raises statutory claims (Counts One

and Two below) because such claims involve the interpretation of ERISA, not purely plan-

based benefit claims involving an interpretation of the Plan.

60.     To the extent exhaustion was required (*e.g.,* as to Count Three), Mr. Adams

did exhaust the Plan's claims procedures.  To the extent he did not, such exhaustion would

have been futile.  To the extent not exhausted and not futile, any remaining exhaustion

requirement was excused by the Plan's failure to establish, maintain and follow reasonable

claims procedures in this case.  29 C.F.R. § 2560.503-1(l).  29 C.F.R. § 2560.503-1(l)

provides that where a plan fails to establish or follow ERISA-compliant claims procedures, "a

claimant shall be deemed to have exhausted the administrative remedies available under the plan." Accordingly, such a claimant is, without more, allowed to bring a suit to recover benefits. *Id.*

61. Here, Defendants failed to establish reasonable claims procedures. For example, the SPD does not describe all claims procedures and the applicable timeframes as required by 29 C.F.R. § 2560.503-1(b)(2) and 29 C.F.R. § 2520.102-3. So too, the Plan's claims procedures do not contain administrative processes and safeguards designed to ensure and to verify that benefit claim determinations are made in accordance with the governing plan documents and that, where appropriate, the plan provisions have been applied consistently with respect to similarly situated claimants. 29 C.F.R. § 2560.503-1(b)(5).

62. Nor did Defendants in this case follow reasonable claims procedures. They denied Mr. Adams' claim in a conclusory fashion without making reference to the Plan provisions upon which their denial was supposedly based and then denied him any right of review. They ignored his right to documents, records and other information relevant to his claim, failed to employ processes and safeguards designed to ensure that this determination was made in accordance with the governing Plan documents and that, where appropriate, the Plan provisions have been applied consistently with respect to similarly situated claimants. Defendants also failed to inform Mr. Adams of or provide him with a whole host of other procedural rights that the law considers essential to any fair consideration of his claim.

### Standard of Review

63. The Court's review of Defendants' interpretation of ERISA and applicable regulations is *de novo.*

64.     Regarding Count Three, whatever the standard of review, in light of the clear and unambiguous language of the Plan, the Court should find Defendants' denial of Plaintiff's claim for benefits arbitrary and capricious. The Plan admits of but one interpretation and that is that employees have an absolute right to continued interest on their PPA until their account is terminated within the meaning of § 11.5.

65.     Should the Court reach the question of the proper standard of review, it should conclude for any number of reasons that *de novo* review applies. *Firestone Tire & Rubber v. Bruch*, 489 U.S. 101 (1989), establishes *de novo* review as the default standard for reviewing ERISA claims, with deferential review only in those instances where fiduciary's decision is an exercise of "a discretion vested in them by the instrument under which they act." *Id.* at 111 (emphasis and internal quotations omitted). In other words, even if the fiduciary is granted discretion to construe the relevant plan provisions, he or she must actually exercise that discretion for deferential review to apply.

66.     That never happened here. The Plan Administrator failed to consult, consider or interpret the terms of the Plan in denying Plaintiff's claim. Deference is not possible since there was no interpretation of the relevant Plan provisions to which the Court could defer.

67.     *De novo* review is appropriate because Mr. Adams was denied elemental administrative due process and his right to a full and fair review of his claim. A denial that occurs without the minimum procedural safeguards provided in the statute and regulations cannot be reviewed deferentially.

68.     *De novo* review is also required because, as the facts alleged herein demonstrate, Defendants' administrative and financial self-interest tainted both the decision-making process and its outcome.

**Specific Claims for Relief**

**Count One- Failure to Actuarially Increase Accrued Benefit to Reflect Delayed Payment**

69.     Plaintiff repeats and re-alleges the allegations contained in all foregoing paragraphs herein.

70.     In violation of ERISA § 203(a), 29 U.S.C. § 1053(a), the Plan caused Plaintiff to forfeit a portion of his nonforfeitable accrued benefit by failing to actuarially increase his benefit to reflect the delay in the payment of his benefit from the later of the date he attained normal retirement age and the date he terminated employment with IBM until the date he actually received his benefit.

**Count Two – Failure to Pay Interest on Missed Payment**

71.     Plaintiff repeats and re-alleges the allegations contained in all foregoing paragraphs herein.

72.     The Plan violated ERISA § 205(c)(8), 29 U.S.C. § 1055(c)(8), IRC § 417(a)(7)(A), by permitting Mr. Adams to elect a retroactive annuity starting date of June 1, 2003 but then paying him, almost 2½ years later on September 19, 2005, the identical lump sum amount, $151,349.10, that it would have paid him on June 1, 2003, without making an appropriate interest adjustment, as also required by law.  *See* Treas. Reg. § 1.417(e)-1(b)(3)(iv)(B).

**Count Three– Failure to Pay Benefits Under the Terms of the Plan**

73.     As set forth above, in clear, repeated and unambiguous fashion, Plan §§ 11.4-11.5 provides that an employee's PPA shall be credited with interest credits regardless of age and until the point at which the PPA is paid as a lump sum distribution or begins to be paid as an annuity.  Notwithstanding the plain language of the Plan, Defendants refused to credit Plaintiff with interest on his account balance between June 1, 2003 and September 19, 2005.

74.     The Plan does not allow any forfeiture of the right to earn interest credits in the event that a participant fails to make a timely election to defer receipt of his or her benefit after retiring.  Neither § 11.4 nor § 11.5 of the Plan includes any caveat regarding a participant's election or failure to elect a distribution of his or her PPA.  Rather, the provisions state categorically that interest will continue to be credited for as long as the PPA is maintained – regardless of the reason.

75.     There is no provision made in the Plan for a participant to forfeit his or her right to receive continued interest credits solely due to his or her failure to make a timely deferral or distribution election.  Even if the Plan were required to commence benefit payments to Plaintiff no later than the first month after his date of departure, there is no basis to punish Plaintiff by permitting the Plan to keep the interest that accrued on his account assets while his account remained with the Plan.  If payments did not timely commence, the Plan had other recourse that it chose not to exercise out of perceived self-interest.  At best, it was an abuse of discretion for Defendants to confiscate interest that rightfully belongs to Plaintiff.

**Count Four-Denial of Right to All Relevant Documents, Records and Information**

76.     ERISA § 503(2), 29 U.S.C. § 1133(2) provides, "in accordance with

regulations of the Secretary, every employee benefit plan shall . . . afford a reasonable

opportunity to any participant whose claim for benefits has been denied for a full and fair

review by the appropriate named fiduciary of the decision denying the claim."  ERISA

§ 503(2), 29 U.S.C. § 1133(2).  The regulation applicable to Mr. Adams' claim states that any

plan's claims review procedure must "[p]rovide that a claimant shall be provided, upon

request and free of charge . . . copies of, all documents, records, and other information

relevant to the claimant's claim for benefits."  29 C.F.R. § 2560.503-1(h)(2)(iii); *id.*,

§ 2560.503-1(j)(3).

77.     "Whether a document, record or other information is relevant to a claim for

benefits shall be determined by reference to paragraph (m)(8) of this section."  29 C.F.R.

§ 52560.503-1(h)(2)(iii).  Paragraph (m)(8) provides in pertinent part:  "A document, record,

or other information shall be considered "relevant" to a claimant's claim if such document,

record, or other information:  (i) Was relied upon in making the benefit determination; (ii)

Was submitted, considered, or generated in the course of making the benefit determination,

without regard to whether such document, record, or other information was relied upon in

making the benefit determination; (iii) Demonstrates compliance with the administrative

processes and safeguards required pursuant to paragraph (b)(5) of this section in making the

benefit determination."  *Id.* § 52560.503-1(m)(8).

78.     The opportunity to review the documents, records and information relevant to

a claim is, among other things, critical to a full and fair review, because only then can a

claimant have access to the evidence upon which the decision-maker relied in denying the claim and thus have the opportunity to challenge the accuracy and reliability of the response. Review of the "relevant" documents and other information in this case was and is additionally important here because it would help to establish that Defendants' denials of Plaintiff's claim were not based upon any discretionary interpretation of the Plan, lacked any rational basis and were the product of conflicts of interest and the Plan's failure to establish and implement policies and procedures to assure consistent treatment of similarly situated participants.

79.     Because Defendants have denied Mr. Adams' right under the claims regulations, the SPD and the Plan itself, to review the relevant documents, records and other information respectively, Defendants should be ordered to permit Plaintiff to review all relevant documents, records and other information forthwith.

## Count Five-Denial of Right to Plan Documents

80.     ERISA § 104(b)(4) entitles participants to "a copy of the latest updated summary plan description, plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, [and] other instruments under which the plan is established or operated." ERISA § 104(b)(4), 29 U.S.C. § 1024(b)(4).

81.     Defendants have denied Plaintiff's February 22, 2007 request for documents under ERISA § 104(b)(4) and done so in bad faith.

## Class Action Allegations

82.     With respect to Counts One through Three, Plaintiff brings suit on behalf of himself and on behalf of all other participants and beneficiaries similarly situated under the provisions of Rule 23 of the Federal Rules of Civil Procedure with respect to violations

alleged herein.  Judicial economy dictates that the issues raised here be resolved in a single

action.

83.    The proposed Class with respect to Counts One and Two is defined as

follows:

> All persons who from January 1, 1995 to the present had or have a vested account
> balance in the IBM Personal Pension Plan who did not receive or begin receiving an
> actual distribution of their Plan benefit until (1) at least one month following their
> final separation of employment for the Company as defined in Plan § 2.13 (*i.e.,* IBM
> Corporation and certain Affiliates) and (2) after they have attained or will have
> attained Normal Retirement Age as defined in Plan § 2.37 (*i.e.,* the later of age 65 and
> the completion of one year of Continuous Service); and the beneficiaries and estates
> of such persons and alternate payees under a Qualified Domestic Relations Order.

84.    The requirements for maintaining this action as a class action under Fed. R.

Civ. P. 23(a) are satisfied.

85.    First, there are too many Class members for joinder of all of them to be

practicable.  There are hundreds of members of the proposed Class dispersed among many

states.

86.    Second, there are common questions of law and fact affecting the rights of the

members of the proposed Class.

87.    Third, the claims of the named Class representative are typical of the claims

of the proposed Class.

88.    Fourth and finally, the named representative will fairly and adequately protect

the interests of the proposed Class.

89.    Additionally, all of the requirements of Fed. R. Civ. P. 23(b)(1) are satisfied

in that the prosecution of separate actions by individual members of the class would create a

risk of inconsistent or varying adjudications establishing incompatible standards of conduct

for defendants and individual adjudications present a risk of adjudications which, as a practical matter, would be dispositive of the interests of other members who are not parties. All of the requirements of Fed. R. Civ. P. 23(b)(2) also are satisfied in that the Plan's actions affected all Class members in the same manner, making appropriate final declaratory and injunctive relief with respect to the Class as a whole.

## Prayer for Relief

WHEREFORE, Plaintiff prays that judgment be entered against Defendants and that the Court award the following relief:

A.    Certification of this action as a class action for all purposes of liability and relief and appointment of undersigned counsel as class counsel pursuant to Fed. R. Civ. P. 23.

B.    Judgment for Plaintiff or Plaintiff and the Class against Defendants on all claims expressly asserted and/or within the ambit of this Complaint.

C.    An order awarding, declaring or otherwise providing Plaintiff and the Class all other such relief to which Plaintiff or Plaintiff and the Class are or may be entitled under ERISA § 502(a), 29 U.S.C. § 1132(a), or any other applicable law, whether or not specified herein.

.    D.    An order awarding pre- and post-judgment interest.

F.    An order awarding attorney's fees on the basis of the common fund doctrine (and/or other applicable law, at Plaintiff's election), along with the reimbursement of the expenses incurred in connection with this action.

Dated:  August 3, 2007                    By:

_____

Eli Gottesdiener [EG0111]
Gottesdiener Law Firm, PLLC
498 7th Street
Brooklyn, N.Y. 11215
(718) 788-1500
(718) 788-1650 (facsimile)

*Attorneys for Plaintiff and the proposed Class*