# EXHIBIT C5

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| RICHARD A. ADAMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION FILE NO. |
| | ) | 1:05-CV-3308-TWT |
| IBM CORP., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM IN SUPPORT OF DEFENDANT'S
## RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

### I.    INTRODUCTION

On July 17, 2006, Defendant IBM Corp. ("IBM") filed a Motion for Summary Judgment ("IBM Motion"). On August 1, 2006, Plaintiff Richard Adams ("Adams") filed a Motion for Summary Judgment ("Adams' Motion") with a Memorandum of Law ("Memorandum"). IBM now files this Opposition to Adams' Motion.

IBM submits the Adams' Motion should be denied for a number of reasons.[1] First, the motion is untimely as it is 14 days beyond this Court's extended deadline. Second, the Motion fails to comply with either Fed.R.Civ.P.

---

[1]   If Adams' Motion is intended merely as an opposition to IBM's Motion, this response will also constitute IBM's reply in support of its Motion for Summary Judgment.

56 or Local Rule 56.1 B as it contains no separate statement of undisputed material facts with record citations.    Indeed, the Memorandum is fraught with unsupported factual assertions, argument and legal conclusions.

Third, the Memorandum does not address the critical issue raised by the Complaint - whether the denial of interest on the lump sum retirement benefit by the Plan Administrator was arbitrary or capricious under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C.S. Section 502 (a)(1)(B). Adams does nothing more than argue his interpretation of an unrelated court order in another case and a section of the Summary Plan Description.  He does not address the provisions of the plan that required him to elect his benefit when he retired or preclude him from deferring his benefit beyond the date of his separation.  Indeed, he does not dispute any of the material facts contained in IBM's motion.  Accordingly, Adams' Motion should be denied and IBM's Motion should be granted.

## II.    **ARGUMENT**

### A.    **Adams' Motion is Untimely**

On July 7, 2006, this Court entered an Order granting a Joint Motion to Extend the Deadline for all Summary Judgment Motions until July 17, 2006.  The original deadline of June 26, 2006 had already been extended by the Court until

2

July 10, 2006 based on an earlier Joint Motion. No further extensions were requested or granted. Accordingly, Adams' Motion filed 14 days after the deadline should be denied as untimely.

**B.      Adams' Motion Fails to Comply With Fed.R.Civ.P. 56 and Local Rule 56.1B.**

Adams' Motion contains no statement of undisputed facts or record citations for most of the factual assertions in the Memorandum. Adams' Motion contains no supporting affidavit. Accordingly, the Motion fails to comply with either Fed.R.Civ.P. 56 or Local Rule 56.1B.

**C.      Adams has failed to establish an ERISA violation.**

As set forth more fully in IBM's Memorandum in Support of it's Motion for Summary Judgment ("IBM Memorandum"), Adams alleges a denial of benefits under a retirement plan in violation of ERISA, 29 U.S.C.S. Section 502(a)(1)(B). As IBM's Plan administrator had discretion to determine eligibility for interest on a lump sum retirement benefit, Adams must show that the denial of such interest was arbitrary or capricious. See IBM Memorandum, pp. 2-5.

Instead, he attaches a portion of an opinion in an unrelated case, Cooper v. The IBM Personal Pension Plan and IBM Corporation, 2005 U.S. Dist. LEXIS 17071 (S.D. Ill. August 18, 2005), reversed at Cooper v. IBM Pension Plan and IBM Corp., 2006 U.S. App. LEXIS 20128 (7th Cir. August 7, 2006) ("Cooper"), a

3

summary annual report, a page from the IBM Pension Plan, a copy of the Ken Morrissey Affidavit and a copy of a business card.

Adams' Motion should be denied on the merits as it does not address how the denial of interest was arbitrary or capricious. Indeed, the Memorandum is fraught with unsupported assertions of fact and arguments that have no bearing on the interest claim in this case. Defendant addresses each of his arguments below.

### D.    The Cooper decision has no bearing on Adams' claim.

As mentioned in IBM's memorandum in support of its motion, Judge Murphy's decision in Cooper, Memorandum pp 5-6, which has now been reversed, has no bearing on Adams' interest claim for a number of reasons. First, while the cited language does describe the retirement benefit options of a life annuity or a lump sum payment, it does not address how these options are effected by the normal retirement age. The opinion does not address the definitive language in Section 12 .1 (a) of the Plan that precludes any deferment of a lump sum benefit beyond the latter of the normal retirement date – the last day of the next month following age 65 or the first month after retirement if the participant is older than 65 :

4

**12.1**    **Time of Retirement Income Payment**

(a)    **Benefit Commencement Date.**  Except as provided in Section 12.1(d), a Participant shall elect in accordance with Section 12.4, a Benefit Commencement Date(s) for his or her retirement income that is the first day of any month between (1) the first day of the month next following the Participant's termination of employment with IBM and its Affiliates, and (2) the first day of the month next following the later of the Participant's termination of employment with IBM and its Affiliates and the Participant's Normal Retirement Date.  If a Participant fails to elect, in accordance with Section 12.4, a Benefit Commencement Date, then the Plan Administrator may commence payments as of the date in clause (2) of the preceding sentence.

Because Adams was beyond the normal retirement age when he retired at age 67

he simply could not defer payment of a lump sum benefit.    That option is only

available until the first day of the next month following your 65th birthday:

If you leave IBM with vested rights to your Personal Pension Account and your account balance is $5,000 ($1,000 beginning March 28, 2005), you may:

- Begin receiving your plan account balance immediately under one of the plan's payment options (described in the section "How you can Receive Your Plan Account"); or

- Defer payment of all or part of your plan account balance.  You may elect to defer 25%, 50%, 75% or 100% of your account balance.  The amount you defer will continue to earn interest credits, but will not earn either pay or transition credits.  You may defer payment until any future date, but no later than the first day of the month following your 65th birthday.

Typically, you'll receive your payment within forty-five days following the later of:

5

- The date you terminate employment; or

- The date that IBM receives your accurately completed PPA distribution forms.

Summary plan Description section 1.5.1  If You leave IBM.

**E.      Section 1.6.5 of the SPD confirms Adams' was not eligible for deferment.**

Adams next argues he was entitled to interest based on Section 1.6.5 Deferral of Payment under the SPD.  That provision allows, inter alia, for continued interest credits if the participant elects to defer payment of his/her benefit. However, the language cited clearly prohibits deferral beyond the first day of the next month beyond the participant's 65th birthday:

> **1.6.5  Deferral of Payment**
>
> If you leave IBM with vested benefits, you may elect to defer all or part of your payment until a later date, but no later than the first day of the month following your 65th birthday.  If you elect to defer part of your benefit, your next election must be to take your remaining account balance either as a lump sum or as an annuity.
>
> The portion of your account balance that you defer will remain in the plan and continue to earn interest credits each month until your account balance is distributed in its entirety.

Adams was not entitled to interest beyond his retirement at age 67 because he was too old to defer payment of the lump sum under the plan.

6

**F.    The age cap for interest in Section 1.6.8.1 of the SPD is not discriminatory.**

Finally, citing paragraph 7 of the Ken Morrissey Affidavit, Adams claims

the age 65 cut off for interest is unlawful discrimination based on age.  However,

it is well settled that an employer may observe the terms of a bona fide

retirement plan under Section 29 U.S.C.A. Section 623 of the Age Discrimination

in Employment Act of 1967 (29 U.S.C.A. Sections 621 et seq) ("ADEA")  without

running afoul of the ADEA.  Hence there is nothing unlawful about an age 65 cut

off for deferment or interest.

For these reasons, Defendant respectfully requests that its motion for

summary judgment is granted and Plaintiff's motion for summary judgment is

denied.

Respectfully submitted this 18th day of August, 2006.

> s/Stephen X. Munger, Esq.
> Georgia Bar No. 529611
> Owen T. Hill
> Georgia Bar No. 354393
> Attorneys for Defendant
> JACKSON LEWIS, LLP
> 245 Peachtree Center Avenue, N.E.
> 1900 Marquis One Tower
> Atlanta, Georgia  30303-1226
> Telephone:  (404) 525-8200
> Facsimile:  (404) 525-1173
> mungers@jacksonlewis.com

## **CERTIFICATION**

I hereby certify that this document has been prepared in Book Antiqua font, 13 point, in compliance with LR 5.1C of this Court.

s/Stephen X. Munger, Esq.

8

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| RICHARD A. ADAMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION FILE NO. |
| | ) | 1:05-CV-3308-TWT |
| IBM CORP., | ) | |
| | ) | |
| Defendant. | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that on August 18, 2006, I electronically filed the foregoing **Defendant's Opposition to Plaintiff's Motion for Summary Judgment** with the Clerk of Court using the CM/ECF system. I also hereby certify that I have mailed the foregoing document via United States Postal Service Certified Mail Return Receipt Requested to the following non-CM/ECF *pro se* plaintiff.

Richard A. Adams
2401 Winshire Drive
Decatur, GA 30035


s/Stephen X. Munger
Georgia Bar No. 529611
Attorneys for Defendant
JACKSON LEWIS, LLP
245 Peachtree Center Avenue, N.E.
1900 Marquis One Tower
Atlanta, Georgia 30303-1226
Telephone: (404) 525-8200
Facsimile: (404) 525-1173
mungers@jacksonlewis.com

# EXHIBIT C6

**ORIGINAL**

FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

OCT 3 0 2006

JAMES N. HATTEN, CLERK
By: [signature]      Deputy Clerk

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

RICHARD A. ADAMS,                    :
:
    Plaintiff,                       :
:
:      CIVIL ACTION FILE NO.
v.                                   :      1:05-CV-3308-TWT
:
IBM CORP.,                           :
:
    Defendant.                       :

## PLAINTIFF'S MOTION FOR RECONSIDERATION,
## TO VACATE, ALTER OR AMEND JUDGMENT, AND
## FOR LEAVE TO FILE A FIRST AMENDED COMPLAINT

### INTRODUCTION

Plaintiff Richard Adams, acting *pro se* but having obtained help from

counsel in the preparation of this filing, respectfully moves pursuant to Fed.

R. Civ. 59(e) to vacate, alter or amend the judgment entered by the Clerk on

October 16, 2006 (Doc. 23), following the October 16, 2006 entry of the Court's

Order dated October 13, 2006 (Doc. 22), *Adams v. IBM Corp.*, 1:05 CV 3308 TWT

(N.D. Ga.), 2006 WL 2947063 (N.D. Ga. Oct. 13, 2006), which granted Defendant

IBM Corp.'s ("IBM") motion for summary judgment (Doc. 13) and denied

Plaintiff's cross-motion for summary judgment (Doc. 16).  Plaintiff also

respectfully moves for reconsideration of the Court's October 16th Order

pursuant to Local Rule 7.2E. In addition, Plaintiff also moves for leave to file a

first amended complaint pursuant to Fed. R. Civ. P. 15(a), should the Court

vacate the judgment and be of the view that Plaintiff is not entitled to file an

amended complaint as a matter of right.[1]

## BACKGROUND

As discussed in the Court's Order, the material facts are not in dispute.

Plaintiff seeks interest on his lump sum retirement benefit of $151,000 under

the IBM Pension Plan (the "Plan") for the period between May 31, 2003, the

date of his retirement, until September 2005, the date on which he made his

election to receive his benefit in the form of a lump sum distribution. Through

correspondence, Plaintiff sought interest on his Pension Pension Account

("PPA") balance for that period of time but the Plan Administrator, Kenneth

Morrissey, denied his claim, saying that Plaintiff failed to make a timely

distribution election when he retired on May 31, 2003, and that in any event the

Plan did not pay any interest to a terminated participant on a lump sum

---

[1] Plaintiff anticipates being able to obtain counsel to formally enter an appearance on his behalf
in this action, no later than any deadline the Court might set for filing an amended complaint.
He regrets any inconvenience to the Court for not having been able to obtain counsel earlier. It
was not for want of trying.

2

distribution beyond the participant's normal retirement age of 65. When Plaintiff retired in May 2003, he was 67 years old.[2]

After exhausting the Plan's claims process, on December 2, 2005, Plaintiff filed suit *pro se* in the Magistrate Court of DeKalb County, Georgia. On December 29, 2005, IBM removed the case to this Court. Thereafter, both parties filed motions for summary judgment. *See* Docs. 13, 16.

The Court granted IBM's motion and denied Plaintiff's. The Court said it did not need to reach the question of what standard of review should apply to the Plan Administrator's denial of Plaintiff's claim for benefits because the Administrator's denial was not wrong for either or both of the reasons given by the Administrator. Order at 5.

First, the Court said that because Plaintiff had failed to make a timely election to defer distribution of his benefit, he was not entitled to receive interest payments during the period following the date on which he was required to elect his benefits until the date that, after he made such election, the Plan distributed his benefit. The Court premised this ruling upon language contained in the Plan that states: "[A] Participant shall elect ... a Benefit Commencement Date [by] the first day of the month next following the

---

[2] As the Court noted, Plaintiff did not at that time elect one of the Plan's optional forms of payment following his departure from IBM. Plaintiff had a dispute with IBM about the calculation of his PPA account balance and did not want to accept a lump sum while litigation involving the Plan was pending in another district.

3

later of the Participant's termination of employment with IBM ..." Order at 5-6
(*quoting* Def.'s Mot. for Summ. J., Ex. C, at 35). The Court said that this
"explicitly requires a participant to 'elect to defer' before one can take advantage
of such a deferment." *Id* at 6.; *see also id.* (citing to Def.'s Statement of
Undisputed Facts in Support of its Mot. for Summ. J., at 11 and stating that "the
Plan requires that [a participant] begin to receive his payments no later than the
first month after his date of departure"). The Court said that, based on this
language, "the Administrator was well within the bounds of the Plan's mandates
when he denied Mr. Adams's request for interest payments for the period of time
following his retirement." *Id.*

The Court also agreed with IBM as to a second reason the
Administrator's denial was not wrong. The Court said that although section
1.6.5 of the Summary of the Plan Description ("SPD"), states that the "[t]he
portion of your account balance that you defer will remain in the plan and
continue to earn interest credits each month until your account balance is
distributed in its entirety," Order at 6 (*quoting* Def.'s Mot. for Summ. J., Ex. [D]
at 21), the Court noted that a later section of the SPD,  section 1.6.8.1,
purported to cut off that right whenever the participant retires after having
reached his or her 65th birthday: "the explicit terms of section 1.6.8.1 of the SPD

4

bar participants from receiving interest credits beyond age 65 if they retire after their 65th birthday." *Id.* at 6-7.

## SUMMARY OF ARGUMENT

There are two basic reasons why the Court's Order should be reconsidered.

*First,* the Court lacked subject matter jurisdiction to enter the October 16th Order because IBM Corp. was and is not the proper party defendant to this ERISA claim for benefits.  Only the plan administrator (or the plan itself) is a proper defendant in such a case, as the Eleventh Circuit has made clear. Why IBM Corp. did not move to dismiss on this basis is unknown to Plaintiff (who regrets having contributed to the error) but it is elemental under Article III of the Constitution that parties cannot stipulate to a case or controversy where there is none or by agreement or inaction create subject matter jurisdiction where it is lacking.

*Second,* IBM misled the Court as to the actual terms of the Plan which govern Plaintiff's claim for benefits as well as the relationship between those terms and the SPD. The Plan provides in plain and unequivocal language that a participant is entitled to accumulate interest credits until his or her PPA balance is withdrawn or converted into a life annuity.  The right is unambiguous, express and unconditional. The Plan nowhere states that the

5

right to receive these continued interest credits is dependent on the participant being less than 65 years of age. The statement to that effect appearing in the SPD cannot alter the plain language of the Plan, which the SPD itself states three different times controls over anything to the contrary contained in the Plan.

Moreover, there is no provision made in either the Plan or the SPD for a participant to forfeit his right to receive continued interest credits solely due to his or her failure to make a timely deferral or distribution election. To the contrary, in the provision of the Plan that specifically addresses what can happen if the participant does fail to make such timely election (a provision of the Plan to which IBM fails to cite to the Court), the Plan indicates that the sole consequence that may be visited upon such participant is that the Plan may force him to commence his benefit in the form of annuity. By necessary implication, no other adverse consequence, especially one as severe as a loss of a portion of the value of one's benefit, can befall such participant. The fact that the SPD says nothing about any such forfeiture both confirms this reading of the Plan document and bars the application of a forfeiture rule, since such consequence would have had to be disclosed to participants in the SPD.

6

## GOVERNING STANDARDS

A motion for reconsideration should be filed only when, after careful consideration, it is deemed "absolutely necessary" by the movant. LR 7.2E, N.D. Ga. Such motions are appropriate to, among other things, correct manifest errors of law or fact. *Id.* The movant must demonstrate why the court should reconsider its decision and set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision, with the decision whether or not to grant a Rule 59(e) motion committed to the sound discretion of the district judge. *Am. Home Assurance Co. v. Glenn Estess & Assocs.*, 763 F.2d 1237, 1238-39 (11th Cir.1985).

A party may also seek relief from a judgment pursuant to Fed.R.Civ.P. 59(e) to correct manifest errors of law or fact. Fed. R. Civ. P. 59(e). To fall within the purview of Rule 59(e), the motion "shall be filed no later than 10 days after entry of the judgment." Fed.R.Civ.P. 59(e).

## ARGUMENT

### I. The Court Lacked Subject Matter Jurisdiction to Enter the October 16, 2006 Order and Judgment.

Under Article III of the Constitution, courts are prohibited from exercising jurisdiction over any matter that is not properly viewed as either a

7

"Case[]" or a "[C]ontrovers[y]." Here, there was and is no such dispute between Plaintiff and Defendant IBM Corp.

ERISA provides that a "civil action may be brought by a participant or beneficiary ... to recover benefits due ... under the terms of [the] plan." ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B). The statute also provides that the plan itself is a juridical entity that may both sue and be sued. ERISA § 502(d), 29 U.S.C. § 1132(d). In some circuits, the plan is the sole proper party to a claim for benefits; in other circuits, the proper party defendant is either the plan administrator or the plan. The Eleventh Circuit has determined that ERISA confers the right to sue the plan administrator for recovery of benefits. *E.g.,* *Hamilton v. Allen-Bradley Co.,* 244 F.3d 819, 824 (11th Cir. 2001). *Accord Garren v. John Hancock Mutual Life Ins. Co.,* 114 F.3d 186, 187 (11th Cir.1997) (holding that employer was proper defendant in ERISA claim when it acted as plan administrator).

Here, the administrator was and is Kenneth Morrissey, *see* Morrissey Aff. ¶ 3, not Defendant IBM Corp., the employer and plan sponsor. Plaintiff, quite simply, sued the wrong party-defendant. For reasons unknown, IBM failed to point this out to Plaintiff or the Court. As a result, the Court rendered a decision in a matter as to which there was, is and will never be any actual case or controversy. Whatever its views on the merits, the Court should vacate the

8

judgment. *See Oakes v. Horizon Financial, S.A.*, 259 F.3d 1315, 1319 (11th Cir. 2001)

("A judgment is 'void' under Rule 60(b)(4) if it was rendered without jurisdiction

of the subject matter"); *see also Burke v. Smith*, 252 F.3d 1260, 1263-66 (11th Cir.

2001) (judgment void due to failure of court sitting in diversity in case involving

minor party to conduct a fairness hearing).

## II.    Plaintiff Has a Right to Interest He Seeks under the Unambiguous Terms of the Plan.

Even assuming the correct parties were before it, the Court erred in

granting Defendant's motion for summary judgment.

As described in Plaintiff's Motion for Summary Judgment, the terms of the

Plan are unequivocal and unconditional: a participant's account balance is

required to be credited with interest until the account is paid out. *See* Pl. Mot.

(Doc. 16) at 1-2 (pointing out that under the terms of the Plan, "a former

employee . . . continues to accumulate interest credits until his PPA balance is

withdrawn"). Contrary to what IBM went to great lengths to make the Court

believe, nothing in the Plan admits of any exceptions, or imposes any cut-off of

that right – such as the date a participant reaches a particular age (e.g., age 65) –

or allows for any forfeiture of that right, such as in the event that the participant

fails to make a timely election to defer receipt of his benefit after retiring and his

account balance is not paid out.

9

This is clear from two sections of the Plan, sections 11.4 and 11.5, which IBM never discusses in its brief, which Administrator Morrissey does not cite in his affidavit, and which are referenced without being quoted only once, in misleading fashion, in Defendant's statement of facts in support of its motion for summary judgment. *See* IBM Stmt. of Facts ¶ 9.

Section 11.4 of the Plan provides that a participant's account will be credited with interest credits every month until the account is "terminated":

> **11.4   Interest Credits**
>
> A Participant's Personal Pension Account shall be credited with Interest Credits as of the end of **each calendar month** beginning with the month after the month the Personal Pension Account is established and **ending with the month before the month such Personal Pension Account is terminated.** * * *

Plan § 11.4 (emphasis added).

Section 11.5 in turn provides that a participant's account will be "terminated" only when the account is paid out (or deemed to be paid under circumstances not applicable here), either in a lump sum or as an annuity:

> **11.5   Termination of Personal Pension Account**
>
> If a Participant's entire Personal Pension Account is paid as a lump sum distribution (or is deemed to be paid as a lump sum distribution or is forfeited under Section 3.3(a)(l) or (b)(l)) or begins to be paid as an annuity, the Participant's Personal Pension Account shall be **terminated as of such Benefit Commencement Date.**

Plan § 11.5 (emphasis added).

10

Together, these provisions provide unambiguously that interest is required to be credited until a participant's benefit is withdrawn from his PPA.

By apparently failing to even consider these two key, dispositive provisions of the Plan in adjudicating Plaintiff's claim for benefits, Administrator Morrissey clearly disentitled himself to whatever deferential standard of review to which he might otherwise have laid claim. Such deference is not possible here since there was no "interpretation" of the relevant Plan provisions to which the Court could defer.[3]

Even if the Court were somehow to overlook the fact that Administrator Morrissey made no mention anywhere of his having factored these key provisions into his analysis, the denial of Plaintiff's claim for benefits still could not stand even under a deferential standard of review. A benefits denial based on an unreasonable interpretation of the plan is by definition arbitrary and capricious. *HCA Health Servs. of Georgia. Inc. v. Employers Health Ins. Co.*, 240 F.3d

---

[3] *Firestone Tire & Rubber v. Bruch*, 489 U.S. 101 (1989), establishes *de novo* review as the default standard for reviewing ERISA claims, with deferential review only in those instances where a fiduciary's decision is an exercise of "a discretion vested in them by the instrument under which they act." *Id.* at 111 (emphasis and internal quotation marks omitted). In other words, even if the fiduciary is granted discretion to construe the relevant plan provisions, he must actually exercise that discretion for deferential review to apply. *See, e.g., Nelson v EG&G Energy Measurements*, 37 F.3d 1384, 1389 (9th Cir. 1994) ("because we do not have an interpretation of the Plan by the Administrative Committee, to whom such authority was granted by the Plan, there is no appropriate exercise of discretion to which to defer"); *Moench v. Robertson*, 62 F.3d 553, 567 (3d Cir. 1995) (deferential review "is appropriate only when the trust instrument allows the trustee to interpret the instrument and when the trustee has in fact interpreted the instrument"). Administrator Morrissey failed to show that he was even aware of Sections 11.4 and 11.5, let alone that he actually interpreted them in adjudicating Plaintiff's claim. His "decision" is owed no deference.

11

982, 993 (11th Cir. 2002).  A plan administrator's interpretation is unreasonable and, therefore, arbitrary and capricious, if, as here, it contradicts clear plan language of the plan.  *E.g., Harris v. Pullman Standard. Inc.*, 809 F.2d 1495, 1498-1499 (11th Cir. 1987) (imposition of an unwritten requirement that participants still be employed to obtain benefits under a severance benefit plan was arbitrary and capricious as the after-the-fact requirement was not part of the plan's terms); *Florence Nightingale Nursing Service, Inc. v. Blue Cross/Blue Shield,* 41 F.3d 1476 (11th Cir. 1995) (upholding a district court ruling on applicable "charge" to be paid to a health care provider under ERISA plan, where plan administrators offered unreasonable interpretation based upon terms not specified in the plan document.); *Epright v. Environmental Resources Mgmt. Inc.*, 81 F.3d 335, 339 (3d Cir. 1996) (even where a plan administrator has discretion to interpret the plan, "the interpretation may not controvert the plain language of the document"); *Zervos v. Verizon New York. Inc.*, 277 F.3d 635, 647 (2nd Cir. 2002) (also arbitrary and capricious for a plan administrator to graft additional language onto unambiguous plan provisions).

IBM argues that the Plan's Summary Plan Description ("SPD") supports its position that Plaintiff is not entitled to interest after he retired, pointing out that § 1.6.8.1 of the SPD informs participants that "your account balance will not

12

receive and interest credits beyond age 65." There are three fatal problems with this argument.

First, there is absolutely no basis for this SPD "rule" in the governing Plan document.

Second, a plan or fiduciary cannot invoke SPD language to preclude participants from exercising rights granted by formal plan texts. While the SPD is a plan document, "the plan is **governed by** documents other than the SPD." *Heffner v. Blue Cross and Blue Shield of Alabama, Inc.,* 443 F.3d 1330, 1341 (11th Cir. 2006) (emphasis added). Thus, the unambiguous provision of the formal plan document that are more favorable to the employee control "despite contrary unambiguous provisions in the SPD." *Bergt v. Retirement Plan for Pilots Employed by MarkAir, Inc.,* 293 F.3d 1139, 1144-45 (9th Cir. 2002). *Accord Shaw v. Connecticut General Life Ins. Co.,* 353 F.3d 1276, 1284 (11th Cir. 2003) (rejecting an SPD-based argument that plan administrator had interpretive discretion "in the absence of any evidence showing that the plan was properly amended"). To hold otherwise "would be to permit plan sponsors and fiduciaries to escape obligations undertaken in duly adopted plans by the simple expedient of disseminating more restrictive SPDs. Such a result would be entirely inconsistent with ERISA's requirements that SPDs be *accurate* and that plans be administered in accordance

13

with their terms, including compliance with amendment procedures." *Schultz v.*

*Stoner,* 308 F.Supp.2d 289, 307 (S.D.N.Y. 2004) (emphasis in the original).

    <u>Third</u>, even assuming in some other circumstance the terms of an SPD

could limit participants' rights under the formal terms of the Plan, in this case

IBM repeatedly swore-off any right to look to the SPD if it conflicted with the

terms of the formal Plan document.  For example, the very first thing IBM tells

participants in the SPD under the banner "Notice" is:

> This is intended to provide a summary plan description of the IBM
> Personal Pension Plan in which you may be eligible to participate.
> Complete details can be found in the official plan documents, **which
> remain the final authority and, in the event of a conflict with this book,
> shall govern in all cases.**

SPD at 4 (emphasis added).

    Two pages later, IBM reiterates:

> This document is a **summary plan description** of the IBM Personal Pension
> Plan in effect as of July 1, 1999. This summary plan description has been
> updated as of January 1, 2005. Complete details of the plan can be found in
> the official plan documents, **which remain the final authority and, in the
> event of a conflict with this book, shall govern in all cases.**

SPD at 6 (emphasis added).

    Yet again, at the conclusion of the SPD, IBM states:

> The description of the IBM Personal Pension Plan in this book constitutes the
> summary plan description required by ERISA for the plan. While every
> effort has been made to describe information accurately, **all details
> furnished, including eligibility for benefits, must necessarily be governed
> by the provisions of the plan document. In all cases where statements
> presented are in conflict with the terms of the plan, or other governing**

14

**documents or law, the provisions described in the plan document or as required by law will control.**

SPD at 6 (emphasis added).

No doubt aware that a plan's SPD cannot deny benefits that are clearly provided under the plan, IBM attempts to cobble together an argument as to why the SPD's "no interest after age 65" rule is supported by the terms of the Plan. Avoiding any sustained discussion of sections 11.4 and 11.5 of the Plan, IBM implicitly argues that these provisions apply only to a participant who has made an affirmative election to defer payments under the Plan. IBM Mtn. at 4, *citing* Plan § 12.1(a); IBM Stmt. of Facts ¶¶ 33-39; Morrissey Aff. ¶ 11. The Plan says no such thing.

*First*, as noted, neither § 11.4 nor § 11.5 of the Plan includes any caveat regarding a participant's election or failure to elect a distribution of his PPA; rather, the provisions state categorically that interest will continue to be credited for as long as the PPA is maintained – regardless of the reason.

*Second*, while § 12.1(a) of the Plan provides that a participant "shall elect" a Benefit Commencement Date, it does not state that the consequence of a failure to make such an election is a cessation of interest credits. Quite to the contrary, even though IBM tries to make the Court think otherwise. The last sentence of the first paragraph of § 12.1(a) – which IBM dropped from its grossly misleading

15

quotation of §§ 12.1(a) and 12.4 as though they were a single provision, *see* IBM

Stmt. of Facts ¶ 10 – provides that:

> **If a Participant fails to elect,** in accordance with Section 12.4, a Benefit
> Commencement Date, then **the Plan Administrator may commence
> payments** as of the date in clause (2) of the preceding sentence [i.e., the
> first day of the month next following the later of the Participant's
> termination of employment with IBM and its Affiliates and the
> Participant's Normal Retirement Date].

Plan § 12.1(a) (emphasis added).

In other words, the Plan provides that if a participant does not make an

affirmative election to receive benefits, the Plan's remedy is that it may

commence benefit payments when the participant reaches Normal Retirement

Age (age 65) or retires thereafter without the participant's consent.[4] This is the

sole and exclusive consequence identified by the Plan of a participant's failure to

make a timely election. *Expressio unius est exclusion alterius.*[5]

Moreover, the SPD says nothing about a participant forfeiting his right to

receive continued interest credits solely due to his failure to make a timely

deferral or distribution election. In keeping with ERISA's purpose of ensuring

---

[4] Had the Plan commenced benefit payments to Plaintiff without his consent pursuant to § 12.1, his PPA would have been terminated and he would have no claim to interest. But the Plan did not force him out, instead keeping his PPA intact. As a result, Plan §§ 11.4 and 11.5 require continued interest credits.

[5] As with Administrator Morrissey's failure to consider § 11.4 of the Plan, discussed *supra*, his apparent failure to consider the relevant clause of § 12.1(a) in considering the effect of Plaintiff's purported failure to make an election also requires that his denial of Plaintiff's claim be reviewed *de novo.*

adequate disclosure with respect to pension and welfare plans, *see* 29 U.S.C. §

1001(a), all plans are required to publish a summary of participants' rights and

obligations under the plan, *see* 29 C.F.R. § 2520.102 2.  Among other things, an

SPD must set out the "circumstances which may result in disqualification,

ineligibility, or denial or loss of benefits."  29 U.S.C. § 1022(b).  The regulations

further provide that:

> For both pension and welfare benefit plans, [the SPD must include] a
> statement clearly identifying circumstances which may result in
> disqualification, ineligibility, or denial, loss, forfeiture, suspension, offset,
> reduction, or recovery (e.g., by exercise of subrogation or reimbursement
> rights) of any benefits that a participant or beneficiary might otherwise
> reasonably expect the plan to provide on the basis of the description of
> benefits required by [the regulations].

29 C.F.R. § 2520.102-3(l ).  *See also* 29 C.F.R. § 2520.102-3(j)(1) (providing that the

SPD for an employee pension plan shall include "a statement describing any

other conditions which must be met before a participant will be eligible to

receive benefits").  Here, the omission from the SPD of any statement that a

participant who failed to make a benefit election would be ineligible for interest

is reason enough no such rule could be applied.

    *Third,* the Plan's own actions demonstrate that IBM does not actually

believe its own argument that continued interest credits are conditioned on a

timely benefit election.  The truth of the matter is, IBM does not cease interest

payments for former employees merely because an employee fails to

affirmatively elect a Benefit Commencement Date. Most former employees who fail to make an election are quite sensibly *deemed* to have made an election to defer payment of their benefits. *See* SPD § 1.6.8 (former employees who do not make a benefit election are entitled to keep their PPA in the Plan and receive continued interest credits through age 65). Thus, IBM is demonstrably incorrect when it implies, *see* Morrissey Aff. ¶ 5; IBM Stmt. of Facts ¶¶ 9, 32-33, that a former employee continues to accumulate interest credits only if he affirmatively elects to defer benefit distributions. It is only former employees who are *older than age 65* who IBM tries to punish (in violation of the terms of the Plan) for failing to make an election. *Id.* at § 1.6.8.1. It is attainment of age 65, not failure to make a benefit election, that is the basis of IBM's "no interest" policy.

*Fourth,* even if the Plan (or SPD) could be read as promising to provide interest credits only to former employees who make an affirmative deferral election, Plaintiff <u>did</u> make an election to defer his benefits. As IBM concedes in a number of places, Plaintiff made a conscious decision to defer receipt of his PPA balance. E.g., IBM Mtn. at 4; IBM Stmt. of Facts ¶ 18. Although Plaintiff did not make an affirmative written election to that effect, he had no reason to believe that such an affirmative election was required. Rather, participants were consistently led to believe that the failure to affirmatively elect a distribution would be interpreted as an election to defer. For example,

18

- SPD § 1.6.8 provides: "If you separate and *do not elect* one of the plan's optional forms of payment, your Personal Pension Account balance will remain in the plan until age 65" (emphasis added). The implication is clear: a participant who wishes to defer receipt of benefits need merely refrain from making an affirmative election to receive benefits, and that would be treated as an affirmative election to defer benefits.

- Plan § 12.1(c) provides: "*Unless the Participant elects* otherwise, in no event shall retirement income payments be made or commence to be made later than the 60th day after the close of the Plan Year in which the last of the following occurs: (1) the Participant's 65th birthday, (2) the tenth anniversary of the Participant's initial participation in the Plan, or (3) the Participant's termination of employment with IBM and its Affiliates" (emphasis added). The Plan Administrator did not commence benefit payments to Plaintiff with 60 days after he retired, which is the latest date permitted under § 12.1(c) absent an election. **Either the Plan Administrator treated Plaintiff's failure to elect a distribution as an affirmative election to defer benefits – or the Administrator violated this provision of the Plan.**

The fact is, IBM and the Plan Administrator were being disingenuous when they represented to the Court that participants are required to affirmatively elect to defer benefits in order to trigger Plan provisions relating to benefit deferrals. Plaintiff would venture to guess that IBM rarely if ever receives affirmative written participant elections to defer benefits – with participants who wish to defer instead being told by the IBM call center simply to forego a current election, which would be treated as an election to defer. This fact would have come to light had IBM been deposed by counsel.

The bottom line is that the Plan's failure to credit Plaintiff's PPA with interest after he retired had nothing to do with his failure to affirmatively elect a

19

deferral of benefits. As § 1.6.8.1 of the SPD makes clear, IBM would not have

credited interest even if Plaintiff had made his deferral election in writing. The

sole reason IBM refused to credit Plaintiff's PPA with interest after he retired was

because he was older than age 65. The governing Plan provisions do not permit

this – nor could they, pursuant to the age discrimination standards set forth

under ERISA § 204(b)(1)(H) and IRC § 411(b)(1)(H).[6] The provision of the SPD

that purports to set forth the "no interest after age 65" rule is invalid and without

force. Plaintiff is entitled to interest for the period from the date of his retirement

through September 2005, when he received a lump sum distribution from the

Plan.

　　　This Court's ruling to the contrary was clear error. As illustrated above,

the fact that Plaintiff did not make an affirmative written election to defer receipt

of his benefits and as a result "failed to formally commence the benefit in the

month following his retirement," Order at 5, did not mean he forfeited the right

to continued interest credits guaranteed under § 11.4 of the Plan. At most, it

meant that the Plan Administrator could have forced out benefits immediately,

had the Administrator chosen that course of action. *See* Plan § 12.1(a). Because

---

[6] Note that Plaintiff is not actually raising any claim of age discrimination, as the Court noted in its Order. He is, however, making the point that the fact that a contrary interpretation would violate or could violate ERISA and the Tax Code's age discrimination rules, and the sponsor's stated intent to remain compliant with ERISA and the Code to maintain the plan favorable tax qualified status, *see* Plan Arts. 1, p. 4, Art. 4, p.21, is yet another strong indication that this cannot be a correct interpretation of the Plan.

20

the Administrator did not exercise his discretion in the regard, Plaintiff's PPA
remained intact and was entitled to continued interest credits.

For similar reasons, the Court was mistaken when it concluded that: "Even
if Mr. Adams had made his election in a timely fashion, the Plan requires that he
begin to receive his payments no later than the first month after his date of
departure." Order at 6. Again, the Plan did not require payments to begin in the
month following Plaintiff's retirement. The Plan required Plaintiff to make an
election, and if he did not the Plan Administrator could either force payment or
allow the Participant's PPA to remain in the Plan. *See* Plan § 12.1(a). *See also* Plan
§ 12.1(c) (permitting the Plan Administrator to delay benefit payments until he
receives a proper election). After all, the Plan did not in fact distribute benefits
upon Plaintiff's retirement, an implicit concession by IBM that payment after age
65 is not required.

Regardless, even if the Plan were required to commence benefit payments
to Plaintiff no later than the first month after his date of departure, there is no
basis under the terms of the Plan, the SPD or in simple fairness to punish
Plaintiff by permitting the Plan to keep the interest that accrued on his account
assets while it remained in the Plan. If payments did not timely commence, that
was the Plan's failure, not Plaintiff's. The Plan has a built-in mechanism for
dealing with situations in which the Plan does not receive a timely benefit

21

election: it allows the Plan Administrator to force payments out. Plan § 12.1(a).

The Plan's failure to exercise its discretion (or obligation) in this regard is no

basis on which to abscond with interest that rightfully belongs to Plaintiff.

### III.    Plaintiff Should Be Given Leave to File an Amended Complaint.

Rule 15(a) of the Federal Rules of Civil Procedure permits a party to

amend a pleading once as a matter of course "at any time before a responsive

pleading is served." Fed. R. Civ. P. 15(a). "If the case has more than one

defendant, and not all have filed responsive pleadings, the plaintiff may amend

the complaint as a matter of course with regard to those defendants that have yet

to answer." *Brewer-Giorgio v. Producers Video, Inc.*, 216 F.3d 1281, 1284 (11th

Cir.2000).

However, other than the circumstances in which the plaintiff may amend

as a matter of course, a party may amend his pleading only "by leave of court or

by written consent of the adverse party." Fed. R. Civ. P. 15(a). District courts

should generously allow amendments even when the plaintiff does not have the

right to amend the complaint. *Foman v. Davis*, 371 U.S. 178, 182 (1962)). A

motion to amend may be denied on grounds such as bad faith, undue delay,

undue prejudice to the defendants, and futility of the amendment. *Maynard v.*

*Bd. of Regents of Div. of Universities of Florida Dep't of Educ.*, 342 F.3d 1281, 1287

(11th Cir. 2003).

22

If the Court agrees that the proper party defendant was and is not now before the Court and vacates the judgment, Plaintiff would have the right to file an amended complaint against the correct parties as a matter of right. If the Court does not reach that question or decides it against Plaintiff but agrees that the judgment should be vacated and Defendant's motion for summary judgment be denied at this time, then Plaintiff would require leave to amend his complaint. In that event, there is no reason not to permit Plaintiff at least one opportunity to amend his complaint. Plaintiff's complaint, as it now stands, is a two-paragraph handwritten statement completed on a state court form. When this case was removed to federal court, Plaintiff did not amend. Defendant answered the complaint by simply denying both paragraphs and asserting a number of affirmative defenses. (Doc. 2).

As shown above, permitting Plaintiff to amend would not be futile and IBM, the Plan Administrator and the Plan have no cognizable claim of prejudice, especially given the poetic license they permitted themselves with the operative terms of the Plan. Moreover, there can be no suggestion that Plaintiff was or is acting in bad faith. Yes, Plaintiff understands his claim far better now with the help of counsel schooled in ERISA, but as shown above, IBM is responsible as well for the Court's entry of an Order where the Court lacked subject matter jurisdiction and where the plain terms of the Plan dictate the precise opposite

23

result.  The fact that Plaintiff is staring at a bill for $1,700 in court costs should

alone dispel any notion IBM might raise in response to this motion that Plaintiff

is attempting to "sandbag" it, the Administrator or the Plan.

## CONCLUSION

For all of the above and foregoing reasons, and such other reasons as may

appear to the Court, Plaintiff hereby requests that this court to grant this motion.

Dated:  October 30, 2006                      Respectfully submitted,

*[signature]*

Richard A. Adams
Plaintiff *pro se*
2401 Winshire Drive
Decatur, Ga.  30035
Telephone:  (770) 981-6069
Email:  adams.family@att.net

## CERTIFICATION

I hereby certify that this document has been prepared in Book Antiqua

font, 13 point, in compliance with LR 5.1C of this Court.

*[signature]*

Richard A. Adams

24

## CERTIFICATE OF SERVICE

I hereby certify that on October 30, 2006 I served a copy of this motion by

hand on:

Stephen X. Munger,
Attorney for Defendant IBM Corp.
 c/o JACKSON LEWIS, LLP
245 Peachtree Center Avenue, N.E.,
1900 Marquis One Tower,
Atlanta, Georgia 30303-1226
Telephone: (404) 525-8200
Facsimile:  (404) 525-1173


*Richard A. Adams*

Richard A. Adams

25

# EXHIBIT C7

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| RICHARD A. ADAMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION FILE NO. |
| | ) | 1:05-CV-3308-TWT |
| IBM CORP. | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR RECONSIDERATION

### I.    INTRODUCTION

COMES NOW Defendant IBM Corp. ("IBM") and hereby opposes Plaintiff Richard Adams' Motion for Reconsideration, to Vacate, Alter or Amend Judgment, and For Leave to File a First Amended Complaint [Doc. 26] ("Motion for Reconsideration"). On October 13, 2006, the Court entered an Order [Doc. 22] ("Order") granting IBM's Motion for Summary Judgment and denying Plaintiff's Motion for Summary Judgment. The Court held that the Plan Administrator was not wrong to deny Plaintiff certain interest credits under ERISA because: (1) Plaintiff failed to timely commence benefits in accordance with the Personal Pension Plan ("Plan"); and (2) the Summary Plan Description ("SPD") barred

participants from receiving interest credits beyond age 65 if they retire after their 65th birthday.  Order, pp. 6-7.  On October 16, 2006, judgment was entered in favor of IBM.  [Doc. 23].  Plaintiff now asks the Court to reconsider, vacate or amend the judgment by raising entirely new arguments in an effort to relitigate this case.  Plaintiff's efforts should fail both procedurally and on the merits.

## II.    LEGAL ARGUMENT

### A.    The Court Had Subject Matter Jurisdiction.

Plaintiff contends that the Court somehow lacked subject matter jurisdiction to enter judgment because IBM was not a proper party defendant under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 502(a)(1)(B).  Plaintiff cites no authority that would deprive this Court of subject matter jurisdiction simply because he sued the wrong party.  This is not surprising because subject matter jurisdiction in this case is determined by the nature of the claims and not the identity of the parties.

The Court has subject matter jurisdiction because Plaintiff filed suit and sought relief under 29 U.S.C. § 1132(a), a provision of ERISA.  The district courts have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.  28 U.S.C. § 1331; Cheshire v. Hass, No. 3:05-cv-1162, 2006 U.S. Dist. LEXIS 12997, at *2 (11th Cir. Mar. 10, 2006) (stating that

2

federal question jurisdiction is raised when a plaintiff alleges a violation of his constitutional rights or a right created under federal law); see also Pegram v. Herdrich, 530 U.S. 211, 216 (U.S. 2000) (stating that a federal court has jurisdiction over a case when the complaint alleges an ERISA violation). Thus, even if IBM is not the proper party defendant, the Court has subject matter jurisdiction because Plaintiff brought this lawsuit under ERISA.

**B.    Plaintiff's Motion Does Not Satisfy the Requirements for Such Relief.**

Plaintiff's Motion for Reconsideration should be denied because he has failed to make the requisite showing under either N.D. Ga. L.R. 7.2(E) or Fed. R. Civ. P. 59(e). "The decision to alter or amend a judgment is an 'extraordinary remedy.'" Waller v. Frost, No. 5:05-CV-201, 2006 U.S. Dist. LEXIS 19925, at *2 (M.D. Ga. Apr. 17, 2006) (quoting Sussman v. Salem, Saxon & Nielsen, P. A., 153 F.R.D. 689, 694 (M.D. Fla. 1994)). Moreover, motions for reconsideration "shall not be filed as a matter of routine practice" but only when "absolutely necessary." N.D. Ga. L.R. 7.2(E). Under Fed. R. Civ. P. 59(e), a judgment should not be reconsidered unless the movant can show: "'(1) an intervening change in controlling law; (2) the availability of new evidence; [or] (3) the need to correct clear error or prevent manifest injustice.'" Simmons v. Edmondson, No. 1:06-CV-1541-WSD, 2006 U.S. Dist. LEXIS 75127, at *2 (N.D. Ga. Oct. 16, 2006)

3

(quoting Sussman, 153 F.R.D. at 694). "Rule 59(e) may not be used to relitigate a claim or to present arguments or evidence that could have been raised prior to the entry of judgment." Brickell v. Dunn, 142 Fed. Appx. 385, 391 (11th Cir. 2005); see also Sequa Corp. v. Gbj Corp., 156 F.3d 136, 144 (2d Cir. 1998) ("Rule 59 is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple'...."); O'Neal v. Kennamer, 958 F.2d 1044, 1047 (11th Cir. 1992) ("Motions to amend should not be used to raise arguments which could, and should, have been made before the judgment was issued."). While the decision to amend is within the Court's discretion, the motion must "'set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision.'" United States v. Battle, 272 F. Supp. 2d 1354, 1357 (N.D. Ga. 2003) (quoting Cover v. Wal-Mart Stores, Inc., 148 F.R.D 294, 294 (M.D. Fla. 1993)).

The judgment should not be reconsidered because: (1) there has been no intervening change in controlling law; (2) there has been no clear error or manifest injustice; and, (3) no new evidence has been discovered. Plaintiff does not cite any new facts or law unavailable to him before judgment was entered. Plaintiff simply raises new and old arguments based on the Plan and SPD even though both documents were discussed extensively in the parties' summary

4

judgment briefs and are in the record. [Doc. 13, Ex.'s C, D]. Plaintiff even filed a

motion for summary judgment and had the opportunity to raise every argument

therein. [Doc. 16]. A motion for reconsideration cannot be used to provide a

litigant with a second chance to make arguments he could have, but did not,

make earlier. *Brickell*, 142 Fed. Appx. at 391.

### C. Plaintiff's New Arguments Have Been Waived.

The arguments listed below cannot be considered by the Court because

Plaintiff raised them for the first time in his Motion for Reconsideration.

Moreover, many of these arguments are unsupported assertions of Plaintiff

rather than evidence in the record:

    i.    Plaintiff sued the wrong party defendant. (Mot. for Rec., at 8-9);

    ii.    The Plan does not impose a cut-off when a participant reaches age 65. (Mot. for Rec., at 10-16);

    iii.    Sections 11.4 and 11.5 of the Plan require the payment of interest credits until a benefit is withdrawn. (Mot. for Rec., at 10-12);

    iv.    The Plan Administrator "apparently" failed to consider Sections 11.4 and 11.5 of the Plan. (Mot. for Rec., at 11);

    v.    The Plan Administrator is not entitled to a deferential standard of review. (Mot. for Rec., at 11);

    vi.    The Plan Administrator's interpretation was unreasonable and, therefore, was arbitrary and capricious. (Mot. for Rec., at 11);

vii.    The Plan Administrator's interpretation contradicted the plain language of the Plan. (Mot. for Rec., at 12);

viii.    There is no basis for SPD Section 1.6.8.1 that informs participants that "your account balance will not receive any interest credits beyond age 65" in the Plan documents. (Mot. for Rec., at 12-13);

ix.    A Plan or fiduciary cannot invoke SPD language to preclude participants from exercising rights granted under the Plan. (Mot. for Rec., at 13);

x.    The Plan is governed by documents other than the SPD. (Mot. for Rec., at 13);

xi.    IBM swore off any right to look to the SPD if it conflicted with the Plan. (Mot. for Rec., at 14);

xii.    The last sentence of Section 12.1(a) of the Plan provides the "sole and exclusive" remedy if a participant fails to elect a benefit commencement date. (Mot. for Rec., at 15-16);

xiii.    The SPD must set out circumstances which result in disqualification under 29 U.S.C § 1022(b). (Mot. for Rec., at 16-17);

xiv.    The Plan's actions demonstrate that IBM does not believe its own argument that continued interest credits are conditioned on a timely benefit election. (Mot. for Rec., at 17);

xv.    IBM does not cease interest payments for former employees because employees fail to elect a benefit commencement date. (Mot. for Rec., at 17-18);

xvi.    Most former employees who fail to make an election are deemed to have made an election to defer payment of their benefits. (Mot. for Rec., at 18);

xvii.    Plaintiff implicitly elected to defer his benefits. (Mot. for Rec., at 18);

6

xviii.   Plan participants were led to believe that failure to elect a distribution would be interpreted as an election to defer. (Mot. for Rec., at 18);

xix.   Plaintiff "would venture to guess" that IBM rarely if ever receives affirmative written participant elections to defer benefits. (Mot. for Rec., at 19);

xx.   The Plan required Plaintiff to make an election, and if he did not, the Plan Administrator could either force payment or allow the Participant's Personal Pension Account to remain in the Plan under Section 12.1(a) of the Plan. (Mot. for Rec., at 21); and

xxi.   The Plan's Administrator's failure to force distribution of Plaintiff's payments no later than the first month after his departure waives the Plan's right to not pay Plaintiff interest on his account. (Mot. for Rec., pp. 21-22).

These arguments could have been raised in support of, or in opposition to, the summary judgment motions. Moreover, they are predicated on the Plan documents that were the subject of the motions. Plaintiff had ample opportunity to raise these arguments prior to judgment. Accordingly, these arguments have been waived.

### D.   Plaintiff Shows No Clear Error of Law.

Plaintiff has failed to establish that the Court made a clear error of law. The Court and parties agree there are no material facts in dispute. (Order, at 3; Mot. for Rec., at 2). Plaintiff has not identified any authority showing the Court

7

incorrectly concluded that the Plan Administrator's decision to deny benefits was not "wrong" or that Plaintiff was not entitled to interest credits after age 65.

### 1.    The Plan Administrator's Decision Was Not Wrong.

The Court correctly held the Plan Administrator was not wrong to conclude that the Plan did not entitle Plaintiff to interest credits beyond his retirement and/or 65th birthday. First, the Court concluded that Plaintiff failed to timely commence his benefit as required by the Plan. Order, at 5-6. Second, it concluded that the SPD bars participants from receiving interest credits beyond age 65 if they retire beyond their 65th birthday. Order, at 6-7.

### 2.    The Plan Provides that Interest Credits Will be Credited Only Until the Latter of the Month in which a Participant Terminates Employment or Reaches Age 65.

Section 11.4 of the Plan sets out the rule for determining the period over which Interest Credits will be credited to a participant's account. Specifically, the section provides that Interest Credits will be credited from the time the account is established and ending the month before the account is terminated. Plan Section 11.5 provides that an account is terminated as of a participant's "Benefit Commencement Date".

Plan Section 2.6 defines the "Benefit Commencement Date" as the first day of the month in which an amount is payable as an annuity or the first day of the

8

month in which all events have occurred which entitle a recipient to a lump sum payment. That section further provides that the Plan Administrator may elect to commence actual payment of a benefit at any time after the Benefit Commencement Date "without any obligation to pay the Participant any special interest payment . . . ." Accordingly, the term Benefit Commencement Date as used in the Plan is not identical to the actual date on which benefit payment is made.

Section 12.1(a) of the Plan states "a participant **shall** elect" a Benefit Commencement Date for his retirement income by the latter of the first day of the month following termination of employment from IBM or his normal retirement date (age 65). (emphasis added). Section 12.1(a) also states that if a participant fails to elect a benefit commencement date, the Plan Administrator "**may**" commence benefit payments following the latter of participant's termination of employment with IBM or the normal retirement age (age 65). (emphasis added). Contrary to Plaintiff's assertion, there is nothing in the Plan to suggest this is the "sole and exclusive" remedy should a participant fail to elect.

Plaintiff even admits that IBM could have commenced benefit payments to Plaintiff without his consent under Section 12.1 "and he would have no claim to

9

interest[.]" (Mot. For Rec., at 16, fn 4). Plaintiff argues, however, that because IBM gave him additional time to elect, Sections 11.4 and 11.5 act as a forfeiture of IBM's right to deny interest credits after he retired. Id. Plaintiff's interpretation is incorrect. The Plan clearly provides that interest credits are credited only until a participant's Benefit Commencement Date and that a participant's Benefits Commencement Date cannot occur later than the later of the participant's termination of employment or normal retirement date (age 65).

### 3.    The Plan and the SPD are Consistent.

Plaintiff argues that Sections 11.4 and 11.5 are inconsistent with the SPD and, therefore, preclude consideration of the plain language of the SPD barring receipt of interest credits after age 65. As described above, Plan sections 11.4 and 11.5, together with Section 12.1, set out clear rules as to when interest credits will be credited to a participant's account.

SPD section 1.6.8.1 is consistent with the Plan. It simply describes in laymen's terms when interest credits cease.

### 4.    It is lawful to Force Distribution at Normal Retirement Age.

Plaintiff claims that the age 65 cut-off on interest credits somehow violates the age provisions of ERISA. However, ERISA and the parallel tax-qualification requirements of the Internal Revenue Code specifically provide that a plan can

10

force a participant to take a distribution of his or her benefits at a normal

retirement age.   ERISA § 203(e) and IRC § 411(A)(11) provide that participant

consent to distribute is only required until the later of the time a participant has

attained normal retirement age or age 62.   See Treas. Reg. § 1.411(a)-11(c)(4)

(same) (copies of IRC § 411(A)(11) and Treas. Reg. § 1.411(a)-11(c)(4) are attached

for the Court's convenience as Exhibit "A").   The Plan defines normal retirement

age as 65.   Section 1.6.8.1 informs participants they will not be entitled to interest

credits after age 65 if they do not take a distribution by their 65th birthday.   It is

undisputed that Plaintiff did not take a distribution by his 65th birthday.   Thus,

IBM was entitled to force distribution of Plaintiff's benefit (and Plaintiff was not

entitled to interest credits) at his 65th birthday.[1]   This provision is lawful and

expressly permitted under ERISA.

### 5.    Plaintiff Concedes That The Plan Could Have Denied Retirement Benefits Based On His Failure To Elect.

Paragraph 2 of Section 12.1(a) provides that:

Unless the Participant elects otherwise, in no event shall retirement
payments be made or commence to be made later than the 60th day
after the close of the Plan Year in which the last of the following
occurs: (1) the Participant's 65th birthday; (2) the tenth anniversary of
the Participant's initial participation in the Plan, or (3) the

---

[1]   In addition, as the Court has noted and Plaintiff admits, he is not alleging a
violation of the Age Discrimination in Employment Act.   Order, at 7; Mot. For.
Rec., at 20, fn 6.

Participant's termination of employment with IBM and its
Affiliates."

Plaintiff concedes that under this provision, IBM could have elected not to
make any retirement payments to Plaintiff because he failed to timely elect after
his separation. Mot. for Rec., at 19. Clearly, this would preclude the payment of
any interest credits. Simply because the Plan Administrator opted not to enforce
this provision does not mean that interest would still accrue after termination in
violation of the SPD. Neither the Plan nor the SPD allow for deferral or
distribution beyond age 65 or termination of employment thereafter. Moreover,
by his own admission, Adams did not defer his benefit. Instead he declined to
elect to avoid compromising any share of any Cooper settlement and because he
was contesting his final PPA balance. Adams Dep., p. 28, lines 1-25 and p. 29,
lines 1-7.

### E.    Plaintiff Has Not Shown the Decision was Wrong, or Arbitrary and Capricious.

Plaintiff has not shown the clear error required to reverse the Court's
holding that the Plan Administrator's denial of benefits was not wrong. Even
*assuming arguendo* the denial of benefits was analyzed under the arbitrary and
capricious standard (as the Plan clearly vests discretion with the Plan
Administrator, Order, at 5, fn 1), Plaintiff cannot meet this burden. It is

12

undisputed that Plaintiff was required to elect and intentionally did not. Second, the SPD clearly (and lawfully under IRC § 411(A)(11); Treas. Reg. § 1.411(a)-11(c)(4)) provides that interest credits do not accrue beyond age 65 if the participant retires after age 65. Thus, it was not arbitrary and capricious for the Plan Administrator to deny Plaintiff interest credits because Plaintiff intentionally refused to elect and was over 65 when he retired.

### F.    Plaintiff's *Pro Se* Status Does Not Entitle Him to Reconsideration Of The Judgment.

Plaintiff's former *pro se* status and recent retention of counsel does not entitle him to reconsideration of the judgment. Waller, 2006 U.S. Dist. LEXIS 19925, at *3-4 (denying *pro se* plaintiff's Rule 59(e) motion to amend or alter judgment). "[P]ro se litigants have been consistently required to comply strictly with procedural rules." Sun v. United States, 342 F. Supp. 2d 1120, 1123 (N.D. Ga. 2004); see also Fetik v. New York Law Sch., No. 97-cv-7746, 1999 U.S. Dist. LEXIS 9755, at *10 (S.D.N.Y. 1999) ("While a pro se litigant 'should not be impaired by the harsh application of technical rules,' she is not excused from producing 'highly convincing' evidence in support of her motion to vacate a final judgment." (internal citations omitted)). Plaintiff fully litigated this case *pro se* and only after receiving an unfavorable judgment did he retain counsel. Plaintiff cannot now relitigate issues already decided by the Court merely because he did

13

not previously have counsel. See Dunn v. Harris, No. No. 94-233, 2002 U.S. Dist. LEXIS 5487, at *32 (W.D. Pa. 2002) (refusing to grant Rule 59(e) motion for reconsideration based on movant's *pro se* status).

### G.    Plaintiff's Motion to Amend Complaint Should Be Denied Because Amendment Would Be Futile.

The Court should deny Plaintiff's motion to amend the complaint because such an amendment would be futile. Tocker v. Philip Morris Co. Inc., 346 F. Supp. 2d 460, 467 (S.D.N.Y. 2004) (denying *pro se* plaintiff's motion to amend complaint to add Plan and Plan Administrator in ERISA case as futile because ERISA claim could not survive summary judgment on the merits). Although 'leave to amend shall be freely given when justice so requires,' a motion to amend may be denied on 'numerous grounds' such as 'undue delay, undue prejudice to the defendants, and futility of the amendment.'" Brewer-Giorgio v. Producers Video, Inc., 216 F.3d 1281, 1284 (11th Cir. 2000) (quoting Abramson v. Gonzalez, 949 F.2d 1567, 1581 (11th Cir.1992)). Clearly in the instant case, after the close of discovery and post-judgment, allowing Plaintiff to amend his Complaint to substitute a party rises to the level of undue delay and would impose undue prejudice on IBM. Moreover, Plaintiff's proposed amendment would be futile because the same analysis in the Order would apply whether IBM, the Plan or Plan Administrator was the defendant. Tocker, 346 F. Supp. 2d

14

at 467. The Court's ruling was based on its interpretation of the Plan, SPD, corresponding documents, testimony of the Plaintiff and affidavit of the Plan Administrator. The record simply would not change if the Plan or Plan Administrator was the Defendant in this case  Accordingly, the Court should deny Plaintiff's motion to amend.

### III. CONCLUSION

The Court's decision was correct and Plaintiff has not demonstrated clear error of law. The lawsuit was properly litigated on the merits through judgment, and Plaintiff cannot now retain a lawyer and try to raise new arguments to have a second bite at the apple. Accordingly, Plaintiff's Motion for Reconsideration should be denied in its entirety.

Respectfully submitted this 27th day of November, 2006.


s/Stephen X. Munger, Esq.
Georgia Bar No. 529611
Owen T. Hill
Georgia Bar No. 354393
Attorneys for Defendant
JACKSON LEWIS LLP
245 Peachtree Center Avenue, N.E.
1900 Marquis One Tower
Atlanta, Georgia  30303-1226
Telephone:  (404) 525-8200
Facsimile:  (404) 525-1173
mungers@jacksonlewis.com

15

## **CERTIFICATION**

I hereby certify that this document has been prepared in Book Antiqua font, 13 point, in compliance with LR 5.1C of this Court.

<u>s/Stephen X. Munger, Esq.</u>

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| RICHARD A. ADAMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **CIVIL ACTION FILE NO.** |
| | ) | **1:05-CV-3308-TWT** |
| IBM CORP. | ) | |
| | ) | |
| Defendant. | ) | |

### CERTIFICATE OF SERVICE

I hereby certify that on November 27, 2006 I electronically filed the **Memorandum in Support of Defendant's Motion for Summary Judgment** with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to the following attorneys of record:

Heather K. Karrh

I also hereby certify that I have mailed the foregoing document via United States Postal Service Certified Mail Return Receipt Requested to the following non-CM/ECF *pro se* plaintiff.

Richard A. Adams
2401 Winshire Drive
Decatur, GA  30035

s/Stephen X. Munger
Georgia Bar No. 529611
Attorneys for Defendant
JACKSON LEWIS LLP
[signature block continued on next page]

245 Peachtree Center Avenue, N.E.
1900 Marquis One Tower
Atlanta, Georgia  30303-1226
Telephone:  (404) 525-8200
Facsimile:  (404) 525-1173
mungers@jacksonlewis.com

# EXHIBIT C8

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

---

RICHARD A. ADAMS,

    Plaintiff,

v.

IBM CORP.,

    Defendant.

          CIVIL ACTION FILE NO.
          1:05-CV-3308-TWT

---

## PLAINTIFF'S REPLY TO IBM CORP.'S OPPOSITION TO PLAINTIFF'S MOTION FOR RECONSIDERATION, TO VACATE, ALTER OR AMEND JUDGMENT, AND FOR LEAVE TO FILE A FIRST AMENDED COMPLAINT

### INTRODUCTION

IBM Corp.'s response to Plaintiff's motion for reconsideration confirms that the Court's October 16th order and judgment should not stand for both of the two reasons identified in Plaintiff's opening brief.

First, IBM now concedes it was the "wrong party" to this action since it is neither the Plan nor the Plan Administrator. Opp. at 2. This means that the Court did not have subject matter jurisdiction to enter the order and judgment it did. IBM never joins issue with Plaintiff's point – yet it is indisputable that a federal court does not have the power to decide a hypothetical controversy and enter a judgment that cannot legally bind the parties.

Second, on the merits, IBM continues not to deal honestly with its own Plan's governing instrument the operative provisions of which IBM tricked the Court into overlooking. The Plan, which for multiple reasons trumps the SPD in this respect, clearly entitles a participant to accumulate interest credits until his or her PPA balance is withdrawn or converted into a life annuity, without any temporal or other limitation. IBM's arguments "in response" are more of the same: efforts to distract the Court from the truth. IBM also fails to join issue with Plaintiff's forfeiture point, which is, quite simply, that there is nothing in the Plan or SPD that can be read as authorizing the Plan to forfeit a participant's unconditional right to receive continued interest credits solely due to his or her failure to make a timely deferral or distribution election.

IBM suggests that it is too late for Plaintiff to challenge this Court's jurisdiction or the decision on the merits, and that Plaintiff's former *pro se* status does not warrant a departure from strict procedural standards. Opp. at 13. Plaintiff seeks no special treatment. However, in considering whether to vacate or reconsider what Plaintiff respectfully submits is a void judgment, the Court may wish to remember that IBM is the party solely responsible for this case being in federal court, having removed Plaintiff's two-line, handwritten (and never once amended) complaint from state court. Plaintiff had no desire to be in federal court but, once removed there, had no basis in law or fact for requesting a

2

remand.  He has apologized to the Court for not having understood and raised

the jurisdictional problem with the Court until now – which is a lot more than

can be said for IBM.

## DISCUSSION

**I.    There was and is no Case or Controversy between Plaintiff and IBM.**

IBM's argument that the Court had subject matter jurisdiction to enter

judgment against Plaintiff and in favor of IBM is meritless.

The parties agree on the essential points:

(1)    Only the plan administrator or the plan itself is a proper defendant

to an ERISA claim for benefits action; and

(2)    IBM was and is "the wrong [defendant]" for Plaintiff's suit, Opp. at

2, because IBM is neither the Plan nor the Plan Administrator.

IBM, however, argues that the Court nevertheless had subject matter

jurisdiction to enter judgment because subject matter jurisdiction "is determined

by the nature of the claims and not the identity of the parties."  Id.  According to

IBM, "Plaintiff cites no authority that would deprive this Court of subject matter

jurisdiction simply because he sued the wrong party."  Id.

IBM overlooks (and indeed never mentions) Article III of the United States

Constitution.  See Pl. Mtn. at 5 ("it is elemental under Article III of the

Constitution that parties cannot stipulate to a case or controversy; "there was

3

and is no such ['Case[]' or '[C]ontrovers[y]'] between Plaintiff and Defendant
IBM Corp.").

Contrary to IBM's suggestion, Article III's Case or Controversy
requirement is acutely concerned with the identity of the parties and insists that
the parties have actually adverse interests.  The Supreme Court established in
*Muskrat v. United States*, 219 U.S. 346 (1911), that Article III incorporates a notion
of proper parties defined in terms of real-world interests even where Congress
purported to authorize private plaintiffs to sue the defendants named.  *Accord*
*Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26, 42(1976) ("the
'case or controversy' limitation of Art. III still requires that a federal court act
only to redress injury that fairly can be traced to the challenged action of the
defendant, and not injury that results from the independent action of **some third**
**party not before the court**") (emphasis added); *R.T. Vanderbilt Co. v. Occupational*
*Safety and Health Review Com'n*, 708 F.2d 570, 576 (11th Cir. 1983).

Thus, IBM has it exactly backwards when it argues that the fact that
Congress gave the federal courts subject matter jurisdiction over ERISA claims is
the end, rather than just the beginning, of the Article III inquiry.  IBM's position,
accurately translated, is that by invoking ERISA, Plaintiff's complaint (once
removed from state court) empowered this Court to render a judgment on his
claim *no matter who Plaintiff named as a defendant.*  Article III, however, does not

4

countenance advisory opinions: the Court needed to have before it not just an ERISA complaint but also a real party-defendant that could either be held to account or declared free of any such obligation under the statute. *See, e.g., Allen v. Wright*, 468 U.S. 737, 751 (1984) ("A plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief"); *Harris v. Evans*, 20 F.3d 1118, 1121 (11th Cir. 1994) (same).

It is axiomatic that a judgment that was entered when the court lacked subject matter jurisdiction is void and is therefore a legal nullity. *See Hertz Corp. v. Alamo Rent-A-Car. Inc.*, 16 F.3d 1126, 1133 (11th Cir. 1994) (vacating a district court's order dismissing case with prejudice where order was "a nullity" because district court lacked jurisdiction).[1]

The Court need not, however, hold that it lacked subject matter jurisdiction to enter judgment here to conclude that the judgment should nevertheless be vacated. As an ERISA statutory or just general jurisprudential matter, it makes no sense to let stand a judgment entered against an admittedly

---

[1] IBM never explains why it even wants a judgment that neither the Plan nor the Plan Administrator can raise as *res judicata* or as a collateral estoppel bar against a future suit by Plaintiff against them. One would think that if IBM were confident that the Court would now reach the same result it did previously once the proper parties are before it, IBM together with the Plan and the Plan Administrator would positively welcome Plaintiff's motion, not resist it.

wrong defendant.  In similar circumstances, without reaching the constitutional question, the Eleventh Circuit has not hesitated to dismiss cases brought against the wrong defendant.[2]  This Court should do likewise.

## II.     The Plan Requires Interest to be Credited Through the Date Benefits Were Actually Paid.

After months of litigation, IBM for the time appears to acknowledge that the terms of the formal Plan document and not the SPD govern the outcome of this case.  The provision of the Plan at issue is Section 11.4, which requires interest to be credited to a participant's account until his "Benefit Commencement Date."  Opp. at 8.  Plaintiff's position is, and has been all along, that the Benefit Commencement Date ("BCD") for his lump sum payment was the date the Plan finally paid him his benefit.  IBM, on the other hand, apparently takes the incongruous position – now that it has been forced to try to square its position with the terms of the Plan – that Plaintiff's BCD was the date he retired. *Id.* at 10 (claiming that "a participant's Benefits Commencement Date cannot occur later than the later of the participant's termination of employment or normal retirement date (age 65)").[3]

---

[2] *See, e.g., Unger v. Moore,* 258 F.3d 1260, 1264 (11th Cir. 2001) (habeas corpus petition dismissed where prisoner sued the wrong defendant).

[3] Plaintiff was 67 years old at termination of employment.

As explained below, it doesn't really matter which interpretation is correct – either way, the Plan owes Plaintiff interest between the date he retired (May 31, 2003) and the date his account was distributed (September 2005). But it is nonetheless worth demonstrating that in fact, Plaintiff's BCD is September 2005, the date the Plan finally paid him his benefit.

Section 2.6 of the Plan defines "Benefit Commencement Date," in the case of a lump sum distribution, as the first day on which all events have occurred which entitle a recipient to a lump sum payment. IBM's contention all along has been that Plaintiff "did not complete the required pension elections forms to receive his lump sum distribution until September, 2005" – the month in which he was actually paid. Morrisey Aff. ¶ 11 (Doc. 13, Ex. B). By IBM's own admission then, Plaintiff's BCD – *i.e.*, the date on which all events occurred which entitled Plaintiff to a lump sum payment – was the date on which he was actually paid in September 2005 (or more accurately, the date that same month on which he completed the required pension election forms).

Because IBM concedes that Section 11.4 of the Plan requires interest to be credited to a participant's account until his "Benefit Commencement Date," it is therefore clear Plaintiff is owed interest through September 2005, not merely May 31, 2003.

7

Not only is this result required under a plain reading of the Plan – any other course of action would actually put the tax qualification of the Plan in jeopardy, potentially resulting in every participant in the Plan being immediately subject to tax on the value of their accrued benefits.  Under Internal Revenue Service regulations, a participant generally can have a BCD that is earlier than the date he is provided and submits his benefit elections only if the Plan explicitly allows such "retroactive" BCDs; and even then, a retroactive BCD is permitted only if the participant "affirmatively elects" such a BCD.  *See* 26 C.F.R. ("Treas. Reg.") § 1. 417(e)-1(b)(1)(3)(iv)(A)-(B) (addressing retroactive annuity starting dates, a/k/a retroactive benefit commencement dates or BCDs) (Ex. A). The Plan does not have a retroactive BCD provision – and Plaintiff certainly did not affirmatively elect a retroactive BCD:  in September 2005 Mr. Adams expressed his desire that his BCD be September 2005, not some date in the past.

But no matter.  Even if Plaintiff's BCD could be said to be a retroactive BCD that complied with IRS regulations, that would only help Plaintiff's case. The regulations expressly provide that a participant who has a retroactive BCD is entitled to interest for the period from the BCD to the date of actual payment –

exactly what Plaintiff is seeking here. *Id.*[4]

IBM may argue that Plaintiff's situation falls under the narrow exception in the IRS regulations that permits a participant to have a BCD that is before his actual payment date if he receives election forms before the operative BCD and makes a timely benefit election based on those forms but there is a short administrative delay in processing his payment. Ex. A, Treas. Reg § 1. 417(e)-1(b)(3)(iii). This fact pattern is addressed in Section 2.6 of the IBM Plan – which provides that in this narrow situation, no "special interest payment" is required. *See* IBM Opp. at 9 (misleadingly quoting Section 2.6 as providing a broad "no interest" rule by failing to include the lead-in clause which makes clear the "no interest" rule only applies to "administrative processing" delays).

But Plaintiff's fact pattern does not fall within this narrow exception to the retroactive BCD rules. First, by law, benefit election forms issued by a plan expire after 90 days, Ex. A, Treas. Reg. § 1. 417(e)-1(b)(3)(ii) – which means the election forms that Plaintiff used to make his September 2005 benefit election

---

[4] The preamble to the Regulations emphasizes that **interest is required any time actual payment follows a retroactive BCD**. According to the IRS: "Several commentators suggested that an adjustment for interest should not be required where the period between the retroactive annuity starting date and the date payments begin was less than three or four months. It was argued that the requirement of an interest adjustment in such a case may create burdens for the plan that are more significant that the additional money that may be paid to the participant. The Treasury Department and the IRS continue to believe that an appropriate adjustment for interest is needed for make-up payments." Treasury Decision 9076, 2003-38 I.R.B. 562 (July 15, 2003) (Ex. B).

9

could have been provided to him no earlier than July 2005. July 2005 is therefore Plaintiff's earliest possible BCD. Second, the 2-year gap between Plaintiff's retirement in May 2003 and the payment of his benefit in September 2005 clearly was not attributable to a mere "processing" delay. Plaintiff wasn't paid because he did not turn in his benefit election forms. The exception in the IRS regulations and the Plan for certain short administrative delays therefore is inapplicable, and the Plan cannot invoke the "no special interest" rule from Section 2.6.[5]

If IBM fails to pay interest to Plaintiff, the Plan would be put in jeopardy of tax disqualification in another way. Paragraph 2 of Section 12.1(a), which is intended to ensure compliance with 26 U.S.C. (Internal Revenue Code or "Code") § 401(a)(14), required the Plan to pay Plaintiff his benefit by February 29, 2004 (60 days following the plan year in which he retired) unless he "elect[ed] otherwise." This is a requirement imposed *on the Plan*, not participants: The rule is that *the Plan* was required to make a payment by this date, not that Plaintiff must have made an election by then (which is the way IBM tries to spin it, *see* Opp. at 12).

---

[5] The fact that the "no special interest" rule in Section 2.6 is cited by IBM for the first time, after months of litigation, in its Opposition to Plaintiff's Motion to Vacate is a good indicator that IBM knows full well the rule does not apply here and is simply engaging in more misdirection and misleading of the Court.

Given this express provision of the Plan, IBM has two choices. It either must acknowledge that Plaintiff's failure to submit a benefit election upon his retirement was interpreted by the Plan as a *de facto* election by Plaintiff to defer benefit payments; or IBM must face the consequences of potential tax disqualification for its failure to comply with Section 2.1(a) of the Plan and Code § 401(a)(14). Plaintiff urges the Court to adopt the first interpretation rather than placing the tax status of the Plan in jeopardy, which would be a financial disaster for all parties.

It should be noted that IBM most certainly did *not* have the third option it says it had: forfeiture of Plaintiff's <u>entire benefit</u>. Opp. at 12. Section 2.1(a) of the Plan and Code § 401(a)(14) are *timing* provisions that govern *when*, not *if*, benefits must be paid from the Plan. It is bizarre that IBM suggests that these provisions would have allowed the Plan to forfeit Plaintiff's benefits merely because he failed to make a timely benefit election – and an outright misrepresentation to contend that Plaintiff agrees with this interpretation. *Id.* Neither the terms of the Plan or the law permit any such thing: ERISA and the Code do "not recognize failure to complete an application as grounds for forfeiture." IRS Gray Book 1991-7 (Ex. C). *See also* Revenue Ruling 81-140, 1981-1 CB 180 (Ex. D) ("Although section 401(a)(14) authorizes, in some cases, a delay in the commencement of benefits beyond the time a participant attains normal

11

retirement age, that section does not authorize the forfeiture of such delayed benefits.")

The bottom line is that the Plan document plainly requires IBM to credit interest to participant accounts until the accounts are distributed. The fact that the SPD incorrectly says otherwise is irrelevant at best, a bad faith fiduciary breach at worst. The point is that the formal Plan document governs.

Besides, the rule in the Plan is the only one that makes sense. Plaintiff acknowledges that, under the Plan, he was supposed to have made a benefit election upon retiring. But IBM must similarly acknowledge that once Plaintiff failed to make an election, the Plan administrator should have – and certainly could have – made an election for him. *See* Plan § 12.1(a). So it is fair to say neither party followed the precise outlines of the Plan.

Regardless, the result was that Plaintiff's account remained in the Plan, earning interest. IBM argues that it should get to confiscate that interest – presumably as some sort of punishment for Plaintiff's failure to do as he was told. But it is hard to see how IBM or the Plan was injured by Plaintiff's purported neglect, which only let the Plan hang on to his money for a few more years. It is equally hard to see why the "remedy" for Plaintiff's intransigence is to reward IBM with a windfall – interest earned on money Plaintiff effectively loaned the Plan.

12

All Plaintiff seeks is to maintain the value of the dollar amount he was promised at retirement – which, because of time value of money principles, obviously required an interest adjustment when the promised amount was paid 2 years later.  Plaintiff is not the greedy party in this case, asking for money he doesn't deserve – IBM is the one seeking an undeserved windfall.

## CONCLUSION

For all of the above and foregoing reasons, and such other reasons as may appear to the Court, Plaintiff hereby requests that this court to grant this motion.

Dated:  December 13, 2006     Respectfully submitted,


*s/Heather K. Karrh*
Heather K. Karrh
ROGERS, HOFRICHTER & KARRH, P.C.
Ga. Bar No. 408379
225 South Glynn Street, Suite A
Fayetteville, GA 30214
770-460-1118
770-460-0920 (fax)
hkarrh@rhkpc.com

## CERTIFICATION

I hereby certify that this document has been prepared in Book Antiqua font, 13 point, in compliance with LR 5.1C of this Court.

*s/Heather K. Karrh*
Heather K. Karrh


13

## CERTIFICATE OF SERVICE

I hereby certify that on December 13, 2006 I served a copy of this Reply via

the ECF system on:

Stephen X. Munger,
Attorney for Defendant IBM Corp.
 c/o JACKSON LEWIS, LLP
245 Peachtree Center Avenue, N.E.,
1900 Marquis One Tower,
Atlanta, Georgia 30303-1226
Telephone: (404) 525-8200
Facsimile:   (404) 525-1173


s/*Heather K. Karrh*
Heather K. Karrh

14