**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X
**RICHARD A. ADAMS**

**On behalf of himself and on
behalf of all others similarly situated,**

                Case No. 07 cv 6984 (JSR)

                **Plaintiff,**

         - against -

**IBM PERSONAL PENSION PLAN, and**    ECF case

**KENNETH J. MORRISSEY,**
**Plan Administrator**

                **Defendants.**
-------------------------------------------------------------X:

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................................................... ii

INTRODUCTION ...........................................................................................................................1

BACKGROUND .............................................................................................................................2

ARGUMENT ...................................................................................................................................8

I.     *Res Judicata* Does Not Bar this Action. ............................................................................8

II.    The Motion to Transfer Should Be Denied ......................................................................12

CONCLUSION ..............................................................................................................................15

**TABLE OF AUTHORITIES**

**FEDERAL CASES**

*Cahill v. Arthur Andersen & Co.*, 659 F.Supp. 1115 (S.D.N.Y. 1986),
    aff'd, 822 F.2d 14 (2d 1987)……………………………………………………………8

*Cole v. Central States*, 227 F. Supp.2d 190 (D. Mass. 2001) …………………………………..13

*Drescher v. Hoffman Motors Corp* .585 F.Supp. 555 (D. Conn. 1984) …………………………9

*Harley v. Minnesota Mining & Manuf. Co.*, 284 F.2d 901 (8th Cir. 2002)……………………...11

*In re Super Van Inc.*, 92 F.3d 366 (5th Cir. 1996)………………………………………….1, 10

*Masella v. Blue Cross & Blue Shield of Connecticut, Inc.*,
    936 F.2d 98 (2d Cir.1991)……………………………………………………………13

*Petrolito v. Arrow Financial Services, LLC,*
    221 F.R.D. 303 (D. Conn. 2004)……………………………………………………….4

*Waldman v. Village of Kiryas Joel*, 39 F. Supp.2d 370 (S.D.N.Y. 1999),
    aff'd, 207 F.3d 105 (2d Cir. 2000)……………………………………………………9

**FEDERAL STATUTES AND REGULATIONS**

ERISA § 203(a), 29 U.S.C. § 1053(a)……………………………………………………………2

ERISA § 205(c)(8), 29 U.S.C. § 1055(c)(8)……………………………………………………..2

26 C.F.R. § 1.417(e)-1(b)(3)(iv)(B) ……………………………………………………………..3

29 C.F.R. § 2560.503-1…………………………………………………………………………3

28 U.S.C. § 1404(a)    ……………………………………………………………………… 12

Fed. R. Civ. P. 8(b)……………………………………………………………………...............4

**OTHER AUTHORITIES**

Restatement (Second) of Judgments § 26(1)(a)……………………………………………………10

18A Wright, Miller & Cooper,
    *Federal Practice and Procedure* § 4464.1 (2d ed. 2002 & 2007 Supp.)………………..8

## INTRODUCTION

"A . . . rule . . . imposing *res judicata* despite a defendant's agreement or acquiescence in the splitting of the claim, would encourage litigants to engage in dishonest (or at least less than forthright) behavior to gain tactical advantage." *In re Super Van Inc.*, 92 F.3d 366, 371 (5th Cir. 1996). This is especially true here where the IBM Personal Pension Plan (the "Plan") and its Administrator Kenneth J. Morrissey (collectively, "Defendants" or the "Plan") did not merely acquiesce in the claim splitting of which they now complain. They are largely responsible for it.

In the earlier proceeding which is the premise of Defendants' motion – namely, *Adams v. IBM Corporation,* No. 1:05-cv-03308-TWT (N.D. Ga.) ("*Adams I*") – Defendants exploited a *pro se* litigant's pleading mistake, incorrectly naming IBM Corporation instead of the IBM Plan (and/or its Administrator) as the defendant in a claim for benefits, to avoid having to deal with that claim on the merits. For months in *Adams I*, Defendants let IBM impersonate the Plan. Then, once Mr. Adams realized and pointed out that the Plan, the proper party, was not before the Court, it refused to join the case despite having the opportunity to do so before the judgment IBM obtained became final.

In short, Defendants preferred a rigged game in which they could win but not lose because they weren't present. They should not be heard from now to seek the imposition of *res judicata*. Defendants' motion to dismiss should be denied, as should their alternative motion seeking transfer of their motion to dismiss to the Northern District of Georgia.

**BACKGROUND**

Ordinarily, if an IBM Pension Plan participant files an ERISA claim for benefits action but mistakenly sues the Plan sponsor, IBM, rather than the Plan itself or the Plan's Administrator Mr. Morrissey, IBM promptly points this out, argues for dismissal and/or does not oppose the substitution or addition of the Plan or the Plan Administrator to the action.  *See, e.g.,* Ex. 1 (hereto), Answer of IBM Corporation, Doc. 7 (Oct. 2, 2006), *Powers v. IBM Corp., et al.,* No. 5:06-cv-00356 (E.D.N.C.); Ex. 2 (hereto), *Powers* Doc. 16 (consent motion to add Plan and Plan Administrator as defendants); Ex. 3 (hereto), *Powers* Doc. 17 (order granting motion).

But the case that Richard A. Adams brought in December 2005 in small claims court in Decatur, Georgia against IBM (and IBM alone) was different.  Mr. Adams, who worked for IBM for 40 years repairing office equipment until retiring in 2003, had stumbled upon a dubious Plan practice.  He discovered that participants who reach normal retirement age (age 65) and terminated employment for IBM, but do not immediately commence their benefit, are denied that to which they are entitled:  the interest credits, interest and/or actuarial adjustment they are owed under the Plan's terms and the law's actuarial equivalency requirements to account for that delay in their benefit commencement.

As explained in more detail in the Complaint filed here (Doc. 1), this practice violates the rights of the affected retiree in three different ways:

> **First**, in violation of ERISA § 203(a), 29 U.S.C. § 1053(a), and the parallel provisions of the Internal Revenue Code (the "Code" or "IRC"), the Plan causes such participant to forfeit a portion of his nonforfeitable accrued benefit by failing to actuarially increase his benefit to reflect the delay in payment.
>
> **Second**, the Plan violates ERISA § 205(c)(8), 29 U.S.C. § 1055(c)(8), IRC

2

§ 417(a)(7)(A), by permitting such participant to elect a retroactive annuity starting date (the later of the date the participant has separated from employment with IBM or has reached age 65) but then paying him the identical lump sum amount or annuity it would have paid him as of that retroactive annuity start date, without making an appropriate interest adjustment, as also required by law. *See* 26 C.F.R. ("Treas. Reg.") § 1.417(e)-1(b)(3)(iv)(B) (distributions pursuant to retroactive annuity starting date election require "appropriate adjustment for interest").

**Third,** the Plan violates its own terms by failing to provide continued hypothetical "interest credits" to such participant's cash balance account between the later of the date the participant has separated from employment with IBM or has reached age 65, and the date that the participant receives or begins receipt of his distribution.[1]

When he walked into small claims court in December 2005 having exhausted the Plan's internal claims process, Mr. Adams did not know all that. But he did understand that he had been promised continued interest credits even after age 65 so long as he left his money in the Plan.

After receiving a copy of Mr. Adams' small claims court filing, IBM hired a leading Atlanta law firm, and in early 2006 removed the case to the United States District Court for the Northern District of Georgia. But at no point during *Adams I,* which IBM actively litigated throughout 2006, did IBM give any hint to either Mr. Adams or the District Court (in contrast to its clear and immediate statements to that effect in *Powers, supra,* Ex. 1) that Mr. Adams had sued the wrong defendant: instead, IBM answered Mr. Adams' small claims court petition with only general denials and the typical affirmative defenses **a plan** asserts in a claim for benefits action. *See* Ex. 4 (hereto) (Answer, Doc. 2, *Adams v. IBM Corporation,* No. 1:05-cv-03308-TWT (N.D. Ga.)).

---

[1] There is apparently now a new Plan document, one page of which Defendants attach to their motion. *See Adams II,* Doc. 11-2. Defendants have not provided Mr. Adams with a copy of the document from which this one page was extracted. *Compare* Count Four (alleging Defendants failed to provide Mr. Adams with the documents, records and other information to which he was and is entitled under the governing Department of Labor ("DOL") notice-and-comment claims regulations, 29 C.F.R. § 2560.503-1 *et seq.*).

3

IBM avoided any parsing of Mr. Adams' factual averments, *compare* Fed. R. Civ. P. 8(b) ("A party . . . shall admit or deny the averments upon which the adverse party relies"), and steered clear of the issue in its Answer, its joint report to the Court, Ex. 5 (hereto) (*Adams I* Doc. 4), motion to quash a subpoena Mr. Adam served on IBM, Ex. 6 (hereto), (*Adams I* Doc. 10), demand for documents from and deposition of Mr. Adams, Ex. 7 (hereto) ("I represent IBM . . . .," *id.,* Dep. Tr. at 5), filings in support of its motion for summary judgment and opposition to Mr. Adam's own motion for summary judgment, Exs. 8-9 (hereto) (*Adam I* Docs. 13, 17); *Adams II* Defs. Ex. C5, Doc. 8-5 (*Adams I* Doc. 18). Not once did it come near saying that Mr. Adams was barking up the wrong tree. For their part, the Plan and Plan Administrator, the real defendants, were well aware of all this: they participated in support of IBM's defense of the action, *see* Ex. 10 (hereto), (*Adams I* Doc. 13-5, Morrissey affidavit), but without ever exposing themselves directly to Mr. Adams as party-opponents, or to the Court as defendants.

In a word, Defendants and IBM exploited Mr. Adams' understandable mistake in an effort to game the system. They decided to use dummy-defendant IBM to take on Mr. Adams' claim and hold in reserve the ace-in-the-hole Mr. Adams unwittingly gave them, *i.e.,* the right to dismissal for suing the wrong defendant. Keeping the issue under the radar-screen would not be all that hard with a *pro se* litigant, and indeed the District Court entered judgment for IBM without ever noticing the problem. Certainly, Defendants had every motive to let IBM pretend it was in effect the Plan: because the Plan has to treat all similarly situated participants alike in such matters, *see, e.g., Petrolito v. Arrow Financial Services, LLC,* 221 F.R.D. 303, 313 (D. Conn. 2004), a

4

ruling for Mr. Adams *against the Plan*, once final, would require the Plan to make the same adjustment for thousands of other Plan participants, past, present and future.[2]

What happened next confirms that Defendants wanted wrong-party-defendant IBM to thus take a risk-free run at eliminating Mr. Adams' claim. After the District Court ruled in IBM's favor (October 13, 2006), and after Mr. Adams found counsel to assist him, IBM and Defendants resisted Mr. Adams' efforts, citing no good reason, to make Defendants parties to the proceeding even though the judgment had not yet become final even at the District Court level.

Specifically, in response to Mr. Adams' timely filed motion for reconsideration and for leave to add the Plan and Plan Administrator as defendants, *Adams II* Def. Ex. C6, Doc. 8-5 (*Adams I,* Doc. 26, although IBM objected to the addition of Defendants, it "neither disputed nor conceded," Def. Mem. at 5, that Mr. Adams had in fact sued the wrong party. *See Adams II,* Defs. Ex. B, Doc. 8-5 (District Court Order denying reconsideration, *Adams I* Doc. 31) ("The Plaintiff contends that the proper party Defendant is Kenneth Morrissey, the Plan Administrator, and not the Defendant IBM, the employer and plan sponsor. IBM does not contest this proposition, nor does it suggest that IBM controlled the administration of the plan. It merely argues that there is no 'subject matter jurisdiction' issue because subject matter jurisdiction refers to the types of claims advanced by the Plaintiff, and not the identity of the parties"). *See also Adams II,* Defs. Ex. C8, Doc.8-5 (*Adams I* Pl. Reply Br. at 5 n.1) ("One would think that if IBM were confident that the Court would now reach the same result it did previously once the

---

[2] According to recent IRS Form 5500 filings, *see, e.g.,* Ex. 11, the IBM Personal Pension Plan has approximately 350,000 participants. Even if a small percentage of participants leave their money in the Plan past the later of the date they reach age 65 or terminate employment for IBM, a change in how the issue is handled would affect thousands.

5

proper parties are before it, IBM together with the Plan and the Plan Administrator would positively welcome Plaintiff's motion, not resist it"). For their part too, Defendants, through IBM, not only rejected Mr. Adams' invitation to become parties to the proceeding but they did not, through IBM, represent that if the District Court indeed decided to reconsider and then entered judgment against IBM that they would agree to be bound by that adverse judgment. *Adams II,* Ex. C7, Doc. 8-5.

Defendants' unsupported assertion here that IBM was their "'virtual representative'" in *Adams I,* Def. Mem. at 8, is thus demonstrably untrue: otherwise, upon the filing of Mr. Adams' motion for reconsideration Defendants would have simply conveyed the message to the Court through their "virtual representative" that they were willing to expose themselves to an adverse judgment as if they were named defendants. By contrast, Mr. Adams willingly exposed himself to the risk of an adverse judgment as to these Defendants.

While Defendants assert that "if Adams had prevailed in the earlier action, he would argue that the *res judicata* binds Defendants," Def. Mem. at 7, they do not say that he would have been *right* to make that argument: Mr. Adams would obviously have been wrong to say the Plan could be bound (even through collateral estoppel) by an adverse judgment obtained solely against IBM. Neither IBM nor Defendants suggested back then, *i.e.,* during the many weeks that Mr. Adams' motion for reconsideration was pending, that Defendants would indeed be bound if the District Court reconsidered and ruled in Mr. Adams' favor. Such a statement would have been the natural and most effective come-back to Mr. Adams' request to add the Defendants. Nor do Defendants produce any contemporaneous documentation from their files showing that upon learning of Mr.

6

Adams' action they internally consented to be bound by an adverse judgment against IBM just as if they themselves had been parties to that action.[3]

In sum, the only explanation is that once IBM and Defendants realized Mr. Adams' mistake, the strategy they came up with was for IBM to make a no-strings-attached go at this *pro se,* obviously unlettered, 68 year old retiree and hold the wrong-defendant defense in reserve to use *in extremis*. Nothing else accounts for IBM actively litigating the case for months without saying anything like what it contemporaneously told the United States District Court for the Eastern District of North Carolina in *Powers,* a benefit claim but not one like Mr. Adams' case which had implications for thousands of other participants:

> [P]laintiff has named IBM as the defendant in this action . . .[but] IBM is the **sponsor** of the IBM Personal Pension Plan ["IBM Plan"]. . . .[T]he plan document for the IBM Plan [the 'IBM Plan Document'] provides that the plan administrator of the IBM Plan is **the individual IBM employee** appointed as plan administrator by the IBM Vice President responsible for Finance and the IBM Vice President responsible for Human Resources; and . . . .the individual IBM employee so designated as plan administrator was [and is] Kenneth J. Morrissey.
>
> \*     \*     \*
>
> . . . .IBM is not specifically identified in the IBM Plan Document as a Named Fiduciary of the IBM Plan; [instead] . . . certain IBM officers have the authority under the IBM Plan to appoint an individual IBM employee as Plan Administrator of the IBM Plan . . . . IBM has such fiduciary duties, **if any**, imposed by ERISA on **employers** under the circumstances described above and any other relevant circumstances. **Except as so admitted, [IBM] . . . denie[s] [plaintiff's assertion that it has a contractual and fiduciary duty to participants to administer the Plan fairly, and to furnish retirement benefits according to the terms of the Plan].**

---

[3] Mr. Adams invites Defendants to submit to the Court *in camera* anything that they contend proves their contemporaneous, unequivocal intent to be bound by an adverse judgment against IBM that Defendants contend is privileged (provided they furnish Mr. Adams with a privilege log). If the Court indicates that it finds that such an internal commitment had in fact been made but just not communicated to Mr. Adams or the District Court at the time, Mr. Adams will dismiss his case with prejudice.

7

\*   \*   \*

> **The IBM Personal Pension Plan is an entity separate and distinct from IBM. IBM does not have the capacity or authority to either pay benefits to [plaintiff] under the IBM Personal Pension Plan or to direct or require the IBM Personal Pension Plan to pay such benefits to [plaintiff]. [Plaintiff's] claim against IBM seeking clarification and enforcement of rights under 29 U.S.C. § 1132(a)(1)(B) should therefore be dismissed.**

Ex. 1 (hereto), *Powers* Ans. ¶¶ 11, 14, 59, 68, 77, 85-86, First Additional Defense (emphasis added)

## ARGUMENT

I.   *Res Judicata* Does Not Bar this Action.

There are cases in which nonmutual *res judicata* (or "claim preclusion") should apply but this is not one of them.

Although mutuality – *i.e.,* the principle that a party is barred from benefiting from a prior judgment unless it would have been bound by it – is no longer required for collateral estoppel (or "issue preclusion"), nonmutual *res judicata* remains the exception, not the rule. *E.g., Cahill v. Arthur Andersen & Co.*, 659 F.Supp. 1115, 1121 (S.D.N.Y. 1986), *aff'd,* 822 F.2d 14 (2d 1987). The exception is where courts will stretch to find a non-party in the first action was in "privity" with a party to the first action, and should be reserved only for cases where a plaintiff splits related claims against different defendants into separate lawsuits. 18A Wright, Miller & Cooper, *Federal Practice and Procedure* § 4464.1 (2d ed. 2002 & 2007 Supp.) ("nonmutual claim preclusion [should apply] only if the new party can show good reasons why he should have been joined in the first action and the old party cannot show any good reasons to justify a second chance").

Accordingly, the cases in this Circuit allowing nonmutual claim preclusion do so where it is clear that the plaintiff purposefully elected to omit his claims against the

8

defendant from the prior action.  *E.g., Waldman v. Village of Kiryas Joel*, 39 F. Supp.2d 370, 382 (S.D.N.Y. 1999), *aff'd,* 207 F.3d 105 (2d Cir. 2000) (finding non-mutual *res judicata* in favor of a defendant "whom the plaintiff chose not to sue earlier"); *Drescher v. Hoffman Motors Corp* .585 F.Supp. 555, 558 n.1 (D. Conn. 1984) (refusing to find nonmutual claim preclusion where plaintiff did not intentionally engage in claim splitting).

Without acknowledging it, Defendants are asking the Court to apply nonmutual *res judicata* in a case where the premise for the application of this not very common form of claim preclusion is entirely absent.  Here, IBM, the Plan and the Plan Administrator are, in truth, the only ones responsible for the splintering of Mr. Adams' claims.  In any normal case, as in *Powers,* the mistake an ERISA plaintiff makes in suing IBM and IBM alone is promptly corrected and all the real parties in interest are brought before the Court.  Mr. Adams' mistake didn't get corrected here because IBM, in collusion with the Defendants, saw to it that it wouldn't.

Defendants make no suggestion, nor could they, that (a) Mr. Adams *purposefully* named IBM and IBM alone with the intent of getting two bites at the apple or later sandbagging the Plan and Plan Administrator, and (b) that IBM, despite assistance from inside and outside counsel and consultations with Defendants, were somehow oblivious to the wrong-defendant issue until Mr. Adams finally raised it in his motion for reconsideration and for leave to amend a year into the suit.

Indeed, the record shows that Mr. Adams was both diligent and serious in his efforts to get Defendants added to the case before final judgment.  It is not Mr. Adams' fault that Defendants would have none of it.  Under the circumstances, Defendants should

9

be deemed to have acquiesced in Mr. Adams coming back and suing them separately later, as he clearly warned them he would do if necessary, *see e.g., Adams II,* Defs. Ex. C8, Doc. 8-5 (*Adams I* Pl. Reply Br. at 5 n.1). *See* Restatement (Second) of Judgments § 26(1)(a) ("When any of the following circumstances exists, the general rule of § 24 does not apply to extinguish the claim, and part or all of the claim subsists as a possible basis for a second action by the plaintiff against the defendant:  (a) The parties have agreed in terms or in effect that the plaintiff may split his claim, or the defendant has acquiesced therein").

To be sure, Mr. Adams' invitation to Defendants to participate in the Georgia action was late – but so too was it favorably timed from their perspective, coming as it did after the District Court had already ruled in "their" favor.  Perhaps Defendants were concerned with the showing Mr. Adams made that IBM had misled the District Court as to the terms of the Plan, while Mr. Adams was still proceeding *pro se* and unable to be of much help to the Court by making an adversarial presentation of the issues.  But whatever Defendants thought the risk might be if they joined the case, their failure to step up to the plate when they had the opportunity to do so precludes them from invoking nonmutual *res judicata.*  The bottom line is that Defendants sought to exploit precisely the wait-and-see approach which nonmutual *res judicata* is intended to prevent, and should not be rewarded for having done so with a ruling applying the doctrine against a *pro se* litigant proceeding in good faith.  *See, e.g., In re Super Van Inc.*, 92 F.3d at 371.

Defendants' motion boils down to their assertion that "IBM is a privy of Defendants in this action because IBM was a 'virtual representative' of Defendants [in

10

*Adams I*] and because IBM controls this action as it did the previous action." Def. Mem. at 8. The assertion is baseless for several reasons.

First, it is clear that Defendants did **not** consider IBM their virtual representative at the time *Adams I* was being litigated: if Defendants saw it that way they would have surfaced and put their commitment to be bound on the record from day one. Yet for a year they stood mute, even after Mr. Adams, aided by counsel, finally brought the issue to the fore. The time to say IBM represented them was (at the latest) then, not now.

Second, it would be passing strange to find privity between a party and non-party where the purported representative of the non-party contemporaneously **denies** it is acting or can act in such capacity, as IBM did in its submission to the court in *Powers*. There, at the precise moment (Fall of 2006) that Defendants now say IBM was their virtual representative in *Adams I,* IBM was telling a nearby federal judge, no way, IBM does not represent the Plan or Plan Administrator, was not a proper or adequate substitute for them and not their proxy. If the Court listens to the *Powers* IBM, Defendants' motion must fail.

Third, it is not possible for IBM to be considered a privy of the Plan for all the reasons IBM said in *Powers* and then some. IBM is separate and distinct from the Plan, not merely as a matter of law but as a matter of fact. Defendant Plan is overfunded by upwards of $10 billion. *See* Ex. 11 (hereto), Schedule B. As a consequence, IBM had no practical stake in the action since any loss to the Plan (even if *Adams I* were viewed as effectively a class action) can be easily satisfied out of the Plan's robust surplus, requiring no contribution from IBM. *Cf. Harley v. Minnesota Mining & Manuf. Co.*, 284 F.2d 901 (8th Cir. 2002) (plaintiff lacks standing to seek recovery for overfunded pension

11

plan where loss resulting from alleged breach cannot meaningfully threaten plan's ability to pay promised benefits). That certain persons at IBM or acting on its behalf may have colluded with Defendants to help make it seem like the Plan was before the Court when it wasn't does not make IBM a privy of the Plan and did not give IBM (as opposed to these one or more dubiously motivated individuals, apparently) any practical stake in the outcome.

For these and such other reasons as may appear to the Court, Mr. Adams respectfully urges the Court to find that *res judicata* does not bar this action.

**II.     The Motion to Transfer Should Be Denied.**

Defendants also argue for a transfer of this putative class action to the Northern District of Georgia on grounds of convenience of the parties and witnesses, per 28 U.S.C. § 1404(a). Def. Mem. at 9-11. The motion lacks merit.

Section 7.3 of the Plan, the Plan's any putative class action forum selection clause, contractually commits Defendants to see that this case is litigated **in this District** (or the jurisdiction in which the largest number of putative class members resides, which Defendants do not say means the Northern District of Georgia). Plan § 7.3. Defendants' effort to evade their own clause is unconvincing: they argue that despite Section 7.3's repeated use of the words "any putative" class action, the Court should find it applicable because Mr. Adams' action is barred by *res judicata*. Def. Mem. at 11. But whether this putative class action is barred by *res judicata* is exactly the question Defendants say they do not want this Court to decide – so Defendants' request that this Court find an exception depends upon its blind acceptance that Defendants are right as to *res judicata*. Even then Section 7.3 admits of no exception: there is nothing ambiguous about "any

12

putative" class action and no other escape hatch. Plus, even if deemed ambiguous, that ambiguity must be construed against Defendants. *E.g., Masella v. Blue Cross & Blue Shield of Connecticut, Inc.,* 936 F.2d 98, 107 (2d Cir.1991).[4]

Defendants' transfer motion lacks merit even without regard to Section 7.3. First, it is hard to fathom how the convenience of the parties and witnesses is better served by moving this motion (or this case) to Georgia when Defendants themselves take the position that the facts are not in dispute and the motion can be readily decided, indeed under Rule 12(b)(6), as a matter of law. Def. Mem. at 1. Defendants fail to identify a single witness needed for the adjudication of their motion, let alone a witness for whom Georgia is more convenient than New York. *See, e.g., Cole v. Central States*, 227 F. Supp.2d 190, 194-95 (D. Mass. 2001) ("the convenience of witnesses is not a consideration since there will be no witnesses called," as the case would be decided on the administrative record). Defendants also fail to identify a single document beyond the ones Defendants uploaded via the ECF system that have to be considered or explain why those too cannot just be uploaded.

Defendants base much of their argument on the supposed fact that Mr. Adams "chose to litigate his first action **in the District Court in Georgia**," Def. Mem. at 10, (emphasis added), which is of course not true. Mr. Adams chose to litigate his first action **in small claims court,** specifically, the Magistrate Court of DeKalb County. He was involuntarily removed to federal court. Had he intended then to bring the action that he is bringing now – as opposed to a small claims action – he would have done just what

---

[4] Defendants also seem to ignore that this case will be back here anyway if Mr. Adams prevails on the *res judicata* question in Georgia. Because Defendants bear the burden of proof on the *res judicata* issue, if the Court is to assume anything regarding *res judicata,* it should assume that Defendants will not prevail and the case will be here anyway, making transfer in the first place unwise.

13

he has done here:  filed suit in this District, where the Plan is administered and the Plan's sponsor is headquartered.

Those latter facts – *i.e.,* the close connection between this District and this case – make Defendants' assertion that handling this case (or this motion) in the Northern District of Georgia would be more efficient not just wholly conclusory but demonstrably wrong.[5]

Also contrary to Defendants' suggestion, the fact that the District Court in Georgia decided *Adams I* will not make *Adams II* go much quicker than if it had never heard of Mr. Adams.  "[Mr.] Adams' new action," Def. Mem. at 10, is much different from *Adams I*:  it is (a) a putative class action which his small claims/Northern District of Georgia action was not; (b) which contains two statutory claims that his small claims/Northern District of Georgia action did not; and (c) argues the contract point quite differently than Mr. Adams did *pro se.*

Defendants argue that "because it adjudicated Adams' first action, the District Court in Georgia is already familiar with the governing law."  Def. Mem. at 10.  But the reference to governing law refers to *state* law when a case involves state law which this does not:  all federal courts are competent to decide federal law.  Moreover, the District Court in Georgia did not decide the legal issue on the table (*res judicata*), did not decide two of the three issues that would be presented by this case if is not barred, and would essentially be deciding the contractual claim entirely anew.

For all these reasons, the motion to transfer lacks merit.

---

[5] Also, the statistics from the Administrative Office of the U.S. Courts, in four of five categories, show cases terminating in this District more swiftly than in the Northern District of Georgia.  Ex. 12 (hereto).

14

## **CONCLUSION**

For the foregoing reasons and such other reasons as may appear to the Court, Plaintiff respectfully requests that the Court deny Defendants' motion to dismiss.

Dated: September 20, 2007                    Respectfully submitted,


       /s/ *Eli Gottesdiener*
Eli Gottesdiener [EG 0111]

**GOTTESDIENER LAW FIRM, PLLC**
498 7th Street
Brooklyn, NY  11215
(718) 788-1500
(718) 788-1650
eli@gottesdienerlaw.com

*Attorney for the Plaintiff and the proposed Class*

15